**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHAEL G. BRAUTIGAM,                    Case No. 1:11-cv-551
           Plaintiff,
                                          Weber, J.
                                          Litkovitz, M.J.
vs.

GEOFFREY P. DAMON, *et al.*               **REPORT AND**
           Defendants                     **RECOMMENDATION**

Plaintiff Michael G. Brautigam, proceeding pro se, brings this action against defendants

Geoffrey Damon (Damon), Daryl Crosthwaite, and Eric Deters and Eric C. Deters & Associates

(the Deters defendants) alleging the following claims: breach of fiduciary duty, legal

malpractice, unjust enrichment, conversion, and negligence. (Doc. 8). Plaintiff also raises a

promissory estoppel claim against defendant Damon. While the complaint alleges violations of

Ohio state law, this Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C.

§ 1332 as plaintiff is an Ohio citizen, defendants are Kentucky citizens, and the amount in

controversy exceeds $75,000.00. *Id.* This action is currently before the Court on defendant

Damon's two motions to dismiss (Docs. 4, 10) and the Deters defendants' motion to dismiss.

(Doc. 14). Plaintiff filed oppositions to Damon's second motion to dismiss (Doc. 13) and the

Deters defendants' motion. (Doc. 17). The Deters defendants filed a reply (Doc. 18) and these

matters are now ripe for ruling.

## I.    FACTUAL ALLEGATIONS

Plaintiff's first amended complaint alleges the following facts. In December 2009,

plaintiff approached the firm of Butkovich & Crosthwaite Co. LPA (B&C) to secure legal

representation for the prosecution of two lawsuits: one involving legal malpractice claims against plaintiff's prior attorneys and the other involving federal civil rights claims against a local judge. (Doc. 8, ¶ 8). Attorney-defendant Damon of B&C met with plaintiff and agreed to represent him on a contingency basis in both lawsuits. *Id*. at ¶ 9. Damon held himself out as a partner of B&C and was identified as the "Managing Attorney" on B&C stationary. *Id*. at ¶ 11.

Damon initiated the malpractice lawsuit but did not file the civil rights action within the relevant statute of limitations and plaintiff's ability to bring the lawsuit was consequently forfeited. *Id*. at ¶ 12. Though Damon agreed to represent plaintiff on a contingency fee basis, Damon required plaintiff to make payments towards a "litigation fund" for purposes of covering costs associated with litigating the malpractice lawsuit. *Id*. at ¶ 13. Between December 2009 and July 2010, plaintiff made several payments to Damon which he believed were being held in a trust account by B&C. *Id*. at ¶ 14. However, Damon maintained a separate client trust account in which he maintained plaintiff's payments. *Id*. at ¶ 15.

Plaintiff alleges that Damon improperly prosecuted his malpractice case and made litigation decisions without seeking plaintiff's consent. *Id*. at ¶¶ 17-19. Plaintiff further alleges that Damon altered an affidavit plaintiff had submitted and signed for purposes of defending against a summary judgment motion. *Id*. at ¶ 19. As a result of Damon's failure to zealously prosecute, plaintiff's malpractice suit was ultimately dismissed as the defendants' summary judgment motions were granted. *Id*. Damon made numerous misrepresentations to plaintiff about the work he was doing on the malpractice suit. Further, at a July 23, 2010 meeting, Damon accepted a $5,000.00 payment from plaintiff and misrepresented to plaintiff that he would be filing the civil rights suit. *Id*. at ¶¶ 20-23. Damon never filed plaintiff's civil rights

lawsuit despite assurances that it would be filed "shortly" and plaintiff forever lost his right to recover due to the expiration of the statute of limitations. *Id*. at ¶ 23.

In late July 2010, Damon was fired from B&C for allegedly stealing client funds. *Id*. at ¶ 24. On or about August 3, 2010, Damon filed a motion to withdraw as counsel for plaintiff.[1] *Id*. at ¶ 25. On August 4, 2010, Joseph Butkovich of B&C drafted a letter informing plaintiff that Damon was no longer employed at B&C and offering plaintiff the option of continuing his attorney-client relationship with B&C or with Damon. *Id*. at ¶ 28. Plaintiff elected to have B&C represent him and returned a signed copy of the letter expressing this intent to B&C via fax and regular mail in August 2010. *Id*. at ¶ at 29. In mid-August 2010, plaintiff spoke with Joseph Butkovich on the telephone and during this conversation the attorney-client relationship was acknowledged and plaintiff was advised that B&C would work with him in his transition to a new attorney and would protect his legal interests in the meantime. *Id*. at ¶ 31. Plaintiff alleges that B&C took no steps to protect his legal interests, conducted no discovery on his legal malpractice case, failed to provide any attorney referrals, and abandoned him as a client. *Id*. Plaintiff further alleges that defendant Crosthwaite of B&C took affirmative steps to harm plaintiff and that B&C knowingly and intentionally damaged the malpractice litigation and "destroyed" his proposed civil rights claim. *Id*. at ¶¶ 29-31.

On approximately November 8, 2010, a hearing was held on defendant Damon's motion to withdraw as plaintiff's attorney. *Id*. at ¶ 33. Damon refused to testify at this hearing and asserted his Fifth Amendment rights. *Id*. However, Damon did testify that he had been

---

[1] Plaintiff does not identify the lawsuit that Damon sought to withdraw from; however, given plaintiff's allegations, it appears that Damon filed a motion to withdraw as plaintiff's counsel in the legal malpractice suit. Notably, it is unclear from plaintiff's allegations whether the aforementioned motions for summary judgment in that suit were granted for defendants before or after Damon sought withdrawal.

employed by the law firm Eric C. Deters & Associates since late September 2010. *Id.* at ¶ 34; Doc. 8, Ex. E (transcript of motion to withdraw hearing held November 9, 2010).[2]

       Defendant Damon had several complaints lodged against him with the Cincinnati Bar Association by plaintiff and other clients. *Id.* at ¶ 35. On or about December 15, 2010, Damon submitted a written response on stationary from the Deters law firm to the Cincinnati Bar Association regarding plaintiff's allegations. *Id.* Damon asserted that he was not guilty with respect to plaintiff's claims. *Id.*; *see also* Doc. 8, Ex. C (copy of the December 15, 2010 letter). In April 2011, the Cincinnati Bar Association filed a formal complaint with the Board of Commissioners on Grievances and Discipline of Supreme Court of the State of Ohio citing, *inter alia*, Damon's improper handling of funds paid to B&C by plaintiff. *Id.* at ¶ 36; *see also* Doc. 8, Ex. A (Cincinnati Bar Association Complaint).

## II.    DEFENDANT DAMON'S FIRST MOTION TO DISMISS (Doc. 4)

       Plaintiff filed his initial complaint on August 15, 2011 naming the aforementioned defendants as well as Damon Law Offices, Butkovich & Crosthwaite Co. LPA, and Joseph Butkovich. (Doc. 1). Defendant Damon shortly thereafter filed a motion to dismiss on the grounds that this Court lacked subject matter jurisdiction due to a lack of complete diversity of citizenship as defendant Joseph Butkovich is, like plaintiff, a citizen of the state of Ohio. (Doc. 4). On September 12, 2011, plaintiff filed an amended complaint which no longer included Joseph Butkovich as a defendant.[3] As the amended complaint cures the jurisdictional issues with regard to diversity, defendant Damon's first motion to dismiss (Doc. 4) should be denied as moot.

---

[2] The Court may consider documents or instruments attached to the complaint or referred to in the complaint that are central to a plaintiff's claim. Fed. R. Civ. P. 10(c).

[3] Plaintiff also omitted previously named defendants Damon Law Offices and Butkovich & Crosthwaite Co. LPA from his first amended complaint.

### III. DEFENDANT DAMON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Doc. 10)

In his motion to dismiss plaintiff's first amended complaint, defendant Damon asserts that: (1) the *Younger* abstention doctrine applies to this matter as there is a pending state disciplinary proceeding; and (2) plaintiff's failure to join an indispensable party, Joseph Butkovich, warrants dismissal under Federal Rule of Civil Procedure 12(b)(7). Plaintiff asserts that the absence of any constitutional issues obviates the application of the *Younger* doctrine in this matter and, further, that Joseph Butkovich is not an indispensable party whose joinder is required under Federal Rule of Civil Procedure 19. For the reasons that follow, the Court finds plaintiff's arguments well-taken.

#### A. The *Younger* Doctrine is Inapplicable to the Present Case.

The abstention doctrine formulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971) prohibits federal courts from presiding over matters that are currently pending before a state court. Absent extraordinary circumstances, federal courts may not interfere with state criminal proceedings in order to entertain constitutional challenges to the state proceedings. *Id.* The Supreme Court has extended this rule to cover state civil and administrative proceedings "if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987). *See also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982) (holding that *Younger* doctrine extends to attorney disciplinary proceedings).

The Sixth Circuit has held that the federal court must abstain where "(1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional

claims." *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995) (citing *Nilsson v. Ruppert, Bronson & Chicarelli Co.*, 888 F.2d 452, 454 (6th Cir. 1989)).  Applying these factors to the instant case, the undersigned finds that *Younger* abstention is not appropriate.

  First, it is unclear whether the first requirement for *Younger* abstention – that there is a pending state proceeding – is met.  Though Damon asserts there is a pending state disciplinary proceeding and plaintiff references such a proceeding, neither party has provided this Court with any evidence that the proceeding is currently pending.[4]  Assuming, *arguendo*, that a disciplinary proceeding is underway, Damon's *Younger* argument fails because the instant matter does not meet the third requirement for abstention.[5]

  The third and final requisite element for application of the *Younger* doctrine is that the state proceedings afford an adequate opportunity for the plaintiff to raise his constitutional claims.  *Kelm*, 44 F.3d at 419.  Here, plaintiff's claims arise out of tort and contract law and this matter is only before a federal court due to diversity of citizenship of the parties; plaintiff has raised no constitutional claims.  Damon has cited no authority requiring abstention under such instances nor is the Court aware of any.  Indeed, the cases cited by Damon in support of *Younger* abstention all involve matters where a constitutional issue was presented to the federal court.  *See Middlesex*, 457 U.S. 423 (*Younger* doctrine applied where respondents challenged constitutionality of attorney disciplinary rules); *Storment v. O'Malley*, 938 F.2d 86 (7th Cir. 1991) (where attorney-plaintiff filed lawsuit against disciplinary board claiming violations of federal laws enacted to protect constitutional privacy rights *Younger* abstention was warranted);

---

[4] Plaintiff included an attachment to his response to Damon's motion to dismiss which appears to be notification from the Cincinnati Bar Association (CBA) that the CBA filed a formal complaint before the Supreme Court of Ohio regarding Damon's alleged misconduct.  *See* Doc. 13, Ex. A.  However, this exhibit does not demonstrate that a disciplinary proceeding is currently pending before the Supreme Court of Ohio.

[5] The second requirement – that the state proceedings involve an important state interest – is met as the Supreme Court has held that attorney disciplinary proceedings involve important state interests.  *See Middlesex*, 457 U.S. at 434-35.

*Gillette v. Edison*, 593 F.Supp.2d 1063 (D.N.D. 2009) (*Younger* abstention applied where attorney who was subject to disciplinary proceedings claimed a constitutional equal protection violation). As there is no constitutional issue present, application of the *Younger* abstention doctrine is inappropriate.

Such a finding is supported by the underlying purpose of *Younger*. The Supreme Court created this abstention doctrine to reinforce the "longstanding public policy against federal court interference with state court proceedings[.]" *Younger*, 401 U.S. at 43. "Abstention is based on the theory that '[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.'" *Middlesex*, 457 U.S. at 435 (quoting *Younger*, 401 U.S. at 45)). The policy concerns underlying the *Younger* holding ensure that federal courts do not usurp the power of the state by intervening in proceedings which can adequately adjudicate a plaintiff's federal claims. However, in this case the purported underlying state proceeding will not be able to redress plaintiff's alleged injuries.

Attorney disciplinary proceedings in Ohio are "carried out by committees which are arms of the Ohio Supreme Court. A Grievance Committee reviews an initial complaint and investigates to decide if a prima facie case of improper conduct exists; if so, a formal hearing is held. The supreme court ultimately decides what discipline should be given." *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 723 (6th Cir. 1993). The attorney disciplinary proceedings are not fora for aggrieved clients to present their claims to Ohio state courts; rather, their limited purpose is to designate whether an attorney has violated ethical and legal rules and, if yes, to dispatch sanctions accordingly. As any state disciplinary proceeding against Damon would be unable to provide the relief requested by plaintiff in his federal court complaint, the

undersigned finds that the *Younger* abstention doctrine is inapplicable and Damon's motion to dismiss in this regard should be denied.

      B.     Plaintiff Has Not Failed to Join an Indispensable Party.

      Damon also seeks dismissal of plaintiff's first amended complaint under Federal Rule of Civil Procedure 12(b)(7), asserting that plaintiff's has failed to join an indispensable party. Rule 19 provides that an individual must be joined to an action if doing so will not destroy subject-matter jurisdiction and that person is necessary to the litigation. Fed. R. Civ. P. 19(a). A party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action" such that without the person's involvement he may be unable to protect his interest or suffer inconsistent obligations. *Id.*

      "[T]he resolution of the question of joinder under Rule 19, and thus of dismissal for failure to join an indispensable party under Rule 12(b)(7), involves a three step process." *Keweenaw Bay Indian Cmty. v. State*, 11 F.2d 1341, 1345 (6th Cir. 1993) (citations omitted). First, a court must determine "whether a person is necessary to the action and should be joined if possible." *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763-64 (6th Cir. 1999). "If the party is deemed necessary for the reasons enumerated in Rule 19(a), the court must next consider whether the party is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction." *PaineWebber Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001) (*citing Keweenaw Bay Indian Cmty*, 11 F.3d at 1345-46). The third step "involves an analysis of the factors set forth in Rule 19(b)[6] to determine whether the court may

---

[6] Rule 19(b) provides that where it is not feasible to join a necessary party the court is required to determine whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Factors a court should consider include: (1) the potential for prejudice of rendering judgment to the existing parties; (2) the ability to lessen or avoid any prejudice; (3) whether judgment

proceed without the absent party or, to the contrary, must dismiss the case due to the indispensability of that party." *Local 670, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO v. Int'l Union, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO*, 822 F.2d 613, 618 (6th Cir. 1987). For the following reasons, the undersigned finds that Mr. Butkovich is not a necessary party to this action and it is therefore unnecessary to reach steps two and three of the Rule 19 joinder analysis. *See Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp.2d 593, 606-07 (W.D. Tenn. 2011) (finding at step one that alleged joint tortfeasor was not a necessary party under Rule 19 due to joint and several liability and declining to reach remainder of analysis); *Russian Collections, Ltd. v. Melamid*, No. 2:09-cv-300, 2009 WL 4016493, at *6 (S.D. Ohio Nov. 18, 2009) (same).

Because Mr. Butkovich is not claiming an interest in the subject of this lawsuit, the only issue the Court needs to address is whether Mr. Butkovich is necessary to accord complete relief to the named parties. Damon asserts that Joseph Butkovich of B&C - his prior employer and successor attorney to plaintiff - is a necessary party and that plaintiff's failure to name him compels dismissal. While Damon argues that he and the other defendants will be subjected to multiple and inconsistent results in the absence of Mr. Butkovich, he provides no explanation of how this might result.

Damon's argument appears to rest entirely on his assertion that Mr. Butkovich has knowledge of events described in plaintiff's first amended complaint. This position ignores the ability of all named parties to disclose Mr. Butkovich as an individual likely to have discoverable information under Rule 26 and to subsequently depose him and, if necessary, call him as a witness at trial. Further, there are no factual allegations in the first amended complaint that Mr.

---

would be adequate without joining the necessary party; and (4) whether, if the action is dismissed for non-joinder, plaintiff has an adequate remedy. *Id.*

Butkovich engaged in any misconduct or injured plaintiff in any way. Consequently, the Court is unable to determine how or what harm or prejudice will befall the named defendants if Mr. Butkovich is not joined. Damon has provided no legal authority supporting his assertion that Mr. Butkovich's prior position as Damon's employer[7] and alleged successor attorney to plaintiff mandates that he be joined as a defendant in this lawsuit. Further, case law does not support Damon's position.

Plaintiff's claims sound primarily in tort and, accordingly, Mr. Butkovich is no more than a potential joint tortfeasor.[8] Since complete relief can be satisfied by any jointly and severally liable tortfeasor, joint tortfeasors are neither necessary nor indispensable parties under Rule 19(a). *See PaineWebber*, 276 F.3d at 204 ("[A] person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party."); *see also* Fed. R. Civ. P. 19, advisory comm. notes ("a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability"). Moreover, should Mr. Butkovich be liable to plaintiff or any named defendant, there are other venues in which he can be held accountable. *See* Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.").

---

[7] To the extent that Damon asserts Mr. Butkovich will be liable to plaintiff under a *respondeat superior* theory, the Court notes that under Ohio law an employer is only vicariously liable for the torts committed by its employees within the scope of employment. *Osborne v. Lyles*, 587 N.E.2d 825, 828-29 (Ohio 1992). Torts are committed within the scope of employment when they are "calculated to facilitate or promote the business for which the employee was hired." *Byrd v. Faber*, 565 N.E.2d 584, 587 (Ohio 1991) (citations omitted). However, where an employee engages in tortious conduct that is "so divergent that its very character severs" the employment relationship, *respondeat superior* liability ceases to exist. *Wiebold Studio, Inc. v. Old World Restorations, Inc.*, 484 N.E.2d 280, 287 (Ohio App. 3 Dist. 1985). In the instant case, plaintiff has alleged that Damon was fired by B&C for engaging in the tortious, possibly criminal, conduct forming the basis of plaintiff's complaint. *See* Doc. 8, ¶ 24. Consequently, while the issue of whether such conduct falls within the scope of employment is generally an issue of fact to be determined by the trier of fact, *Wiebold*, 484 N.E.2d at 251, it is a likely outcome that Damon alone will be held liable for any of plaintiff's proven claims.

[8] Under Ohio law, tortfeasors are jointly and severally liable for torts when it is determined that two or more persons proximately caused the same injury. *See* Ohio Rev. Code § 2307.22.

-10-

The Court finds that it will be able to accord complete relief among the existing parties in the absence of Mr. Butkovich. Accordingly, Mr. Butkovich is not a necessary party within the meaning of Rule 19 and Damon's Rule 12(b)(7) motion to dismiss should be denied.

## IV. THE DETERS DEFENDANTS' MOTION TO DISMISS (Doc. 14)

The Deters defendants seek to dismiss plaintiff's complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6). These defendants assert that plaintiff has failed to allege facts sufficient to state a claim against them for all asserted claims: breach of fiduciary duty, legal malpractice, unjust enrichment, and negligence. For the following reasons, the undersigned finds that plaintiff's amended complaint fails to state a claim against the Deters defendants.

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, (1974). *See also Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To avoid dismissal for failure to state a claim for relief, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). While

the Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Although plaintiff need not plead specific facts, his statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson,* 551 U.S. at 93 (citations omitted). Plaintiff's factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Twombly,* 550 U.S. at 556. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). With these principles in mind, the Court reviews plaintiffs' complaint.[9]

---

[9] Plaintiff argues that his pleading should be liberally construed due to his pro se status and states that pro se complaints must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, it appears that plaintiff is, in fact, an attorney who has represented clients on a pro hac vice status in several matters in this District. *See Markowitz, et al v. Procter & Gamble, et al*, No. 00-cv-190; *Thiemann v. OHSL Financial Corp., et al*, No. 00-cv-793; *Tribble v. Graham, et al*, 03-cv-403; *Bovee Joint Trust, et al v. Coopers & Lybrand, et al*, 97-cv-449. The less stringent pleading standard is applied to protect individuals prosecuting matters on their own behalf who are without the benefit of the requisite training and educational background to understand how to draft legal complaints. However, plaintiff has the full benefit of a legal education and, consequently, the Court will hold his complaint to the standards enunciated in *Twombly* and *Iqbal*. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180 (3d Cir. 2009) (applying *Iqbal* and *Twombly* standards to a pro se attorney's complaint while remaining mindful of the duty to liberally construe the

A. <u>Plaintiff has failed to allege facts sufficient to state a claim against the Deters defendants for breach of fiduciary duty.</u>

In Count I of the first amended complaint, plaintiff asserts a claim for breach of fiduciary duty against Damon, B&C partner Daryl Crosthwaite, and the Deters defendants based upon his attorney-client relationship with Damon, B&C, and the Deters defendants.  Plaintiff alleges that these defendants breached their duty to plaintiff due to Damon's failure to file actions as promised, failure to vigorously pursue plaintiff's claims, failing to inform plaintiff of material changes in the circumstances of his litigation (such as Damon being fired by B&C), and taking plaintiff's money for services which were never rendered.  (Doc. 8, ¶ 41).  Plaintiff further alleges that as a direct and proximate cause of Damon's breach of fiduciary duty, plaintiff was damaged in an amount exceeding $75,000.00.  *Id.* at ¶ 42.

To state a claim for breach of fiduciary duty under Ohio law,[10] plaintiff must allege: (1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe the duty, and (3) an injury proximately resulting therefrom.  *Strock v. Pressnell*, 527 N.E.2d 1235, 1243 (Ohio 1988).  Plaintiff's fiduciary duty claim against the Deters defendants stems from his allegations that they owed plaintiff the same duty as Damon, plaintiff's attorney, because they employed Damon from late September 2010 to at least November 2010, the date of the hearing on the motion to withdraw.  Upon review of the allegations contained in plaintiff's first amended complaint, his fiduciary duty claim against the Deters must fail.

complaint); *Richards v. Duke University*, 480 F.Supp.2d 222, 234 (D.D.C. 2007) (pro se attorney plaintiffs are "not automatically subject to the very liberal standards afforded to a non-attorney pro se plaintiff because an attorney is presumed to have knowledge of the legal system and need less protections from the court.").

[10] Under the *Erie* rule, a federal court sitting in diversity "must apply the same substantive law that would be applied if the action had been brought in a state court of the jurisdiction in which the federal court is located." *Equitable Life Assur. Soc. of U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (citing *Erie*, 304 U.S. 64).  Plaintiff and the Deters defendants have both assumed that the substantive law of the state of Ohio applies to plaintiff's tort claims in this matter.

"Under Ohio law, a fiduciary relationship is one in which 'special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtues of this special trust.'" *Anchor v. O'Toole*, 94 F.3d 1014, 1023 (6th Cir. 1996) (quoting *Craggett v. Adell Ins. Agency*, 635 N.E.2d 1326, 1331 (Ohio 1993)). "An assumption by one party that a fiduciary duty exists does not fulfill the Ohio Supreme Court's requirement that both parties must understand that a special trust or confidence has been reposed." *Premier Bus. Group, LLC v. Red Bull of North America, Inc.*, No. 08-cv-1453, 2009 WL 3242050, at *8 (N.D. Ohio Sept. 30, 2009) (citing *Anchor*, 94 F.3d at 1024).

Though it is well-recognized in Ohio jurisprudence that an attorney has a fiduciary duty to his or her clients,[11] an essential element in stating a claim for a breach of that duty is that an attorney-client relationship exists. Though plaintiff makes conclusory allegations that such a relationship existed with the Deters defendants, the factual content of his complaint contradicts this assertion. Plaintiff alleges that upon learning Damon was fired from B&C, he opted to be represented by B&C at some point in August 2010. *See* Doc. 8, ¶¶ 28-29. Further, plaintiff alleges that both himself and Joseph Butkovich of B&C acknowledged that plaintiff was a client of B&C, and not a client of Damon's, in mid-August 2010. *Id.* at ¶ 31. Taking plaintiff's allegations as true, plaintiff terminated his attorney-client relationship with Damon in August 2010, when he opted to have B&C – and not Damon – continue to represent him in his legal malpractice claim. Moreover, according to plaintiff's allegations and Damon's testimony at the motion to withdraw hearing, Damon did not become employed by the Deters defendants until September 2010. *Id.* at ¶ 34; Doc. 8, Ex. E. As plaintiff had no attorney-client relationship with

---

[11] *See Petersen Painting & Home Improvement, Inc. v. Znidarsic*, 599 N.E.2d 360, 362 (Ohio App. 11 Dist. 1991) ("There is no doubt that an attorney-client relationship imposes a fiduciary duty upon the attorney[.]").

Damon after August 2010, there was no fiduciary duty imputed to the Deters defendants when they hired Damon in September 2010.

Nowhere in the complaint does plaintiff allege that the Deters defendants and plaintiff communicated and agreed upon the creation of a fiduciary duty. Rather, plaintiff's allegations demonstrate that the Deters defendants believed there was no fiduciary duty as they refused to represent plaintiff and specifically denied the existence of an attorney-client relationship. *See* Doc. 8, ¶ 64.[12] Clearly, plaintiff and the Deters defendants did not both "understand that a special trust of confidence [had] been reposed." *Anchor*, 94 F.3d at 1024. Consequently, plaintiff's first amended complaint fails to allege facts from which this Court can infer that the Deters defendants owed plaintiff a fiduciary duty. Without alleging this prerequisite relationship, plaintiff's complaint fails to state a claim for breach of fiduciary duty against the Deters defendants.

     B.  <u>Plaintiff has failed to allege facts sufficient to state a claim against the Deters defendants for legal malpractice.</u>

Under Ohio law, "[a] malpractice claim requires '(1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, (5) and damages.'" *Antioch Litigation Trust v. McDermott Will & Emergy LLP*, 773 F. Supp.2d 758, 764 (S.D. Ohio 2010) (quoting *Shoemaker v. Gindlesberger*, 887 N.E.2d 1167, 1170 (Ohio 2008)). Plaintiff's legal malpractice claim against the Deters defendants fails for the same reason as his breach of fiduciary duty claim – the facts pleaded by plaintiff in his first amended complaint are insufficient to allege the existence of an attorney-client relationship between plaintiff and the Deters defendants.

---

[12] Plaintiff alleges that "in an email exchanges (sic) between Plaintiff and Defendant Eric Deters, Defendant Deters stated 'Any legal matter [Damon] handled before he joined me is between you and him. The fact that he withdrew after joining me does not make me responsible for any mess[.]'"

As discussed in detail above, plaintiff ended his attorney-client relationship with Damon in August 2010 when he elected to be represented by B&C. Accordingly, plaintiff had no attorney-client relationship with Damon at the time Damon was hired by the Deters defendants in September 2010. Moreover, plaintiff's allegations demonstrate that the Deters defendants affirmatively denied the existence of an attorney-client relationship. Thus, plaintiff has failed to allege the required attorney-client relationship and his legal malpractice claim against the Deters defendants should be dismissed.

Assuming, *arguendo*, that plaintiff had alleged facts sufficient from which this Court could infer that an attorney-client relationship existed, plaintiff's malpractice claim against the Deters defendants would still fail as he has not alleged facts that demonstrating that the Deters defendants breached this duty thereby proximately causing damage to plaintiff. The bases for plaintiff's malpractice claim are his allegations that between December 2009 (when Damon began representing plaintiff) and July 2010, Damon took money from him and failed to properly prosecute his lawsuits which damaged plaintiff, to wit, his malpractice lawsuit was dismissed at the summary judgment stage and the statute of limitations ran on plaintiff's civil rights claim. As plaintiff alleges, Damon did not become an employee of the Deters defendants until September 2010 – *after* Damon allegedly breached his duty to plaintiff and caused him damage. As plaintiff's damages accrued prior to Damon being hired by the Deters defendants, plaintiff's malpractice claim against the Deters defendants cannot survive the instant motion to dismiss.

C. Plaintiff has failed to allege facts sufficient to state a claim against the Deters defendants for unjust enrichment.

"Unjust enrichment is an equitable doctrine, not based on contract law but upon quasi-contract." *Homan, Inc. v. A1 AG Servs., L.L.C.*, 885 N.E.2d 253, 260 (Ohio App. 3 Dist. 2008). Unjust enrichment arises when a person "has and retains money or benefits which in justice and

equity belong to another." *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005). To adequately plead a claim for unjust enrichment in Ohio, a plaintiff must allege the following elements: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment[.]" *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984).

The Deters defendants argue that plaintiff's complaint fails to allege facts sufficient to state a claim for unjust enrichment as plaintiff's allegations concerning payment occurred prior to their employing Damon. Plaintiff's response in opposition appears to rely solely on the fact that when Damon returned some of plaintiff's payments he did so by writing to plaintiff on letterhead from the Deters defendants' law firm.[13] Such a remote connection is insufficient to state a claim for unjust enrichment.

At no point does plaintiff allege facts demonstrating that he conferred a benefit upon the Deters defendants, that the Deters defendants were aware of said benefit, or that the Deters defendants retained the benefit unjustly. Rather, plaintiff clearly alleges that he made any and all payments directly to Damon while he was still employed by B&C. (Doc. 8, ¶¶ 2, 13-15, 23). Further, plaintiff alleges that he paid the whole of the $16,500.00 at issue to a litigation fund that "was at all times within the custody and control" of Damon and B&C. *Id.* at ¶ 50. Taking these allegations as true, the Deters defendants never had access to these funds or received payment

---

[13] Plaintiff further appears to argue that the Deters defendants were unjustly enriched as Damon was billing plaintiff while he was employed by Eric C. Deters & Associates. *See* Doc. 17, p. 9. In support, plaintiff cites to Exhibit F of his first amended complaint which appears to be Damon's billing sheet for work done on plaintiff's lawsuit. The Court declines to adopt plaintiff's opinion that this document accurately reflects the time Damon charged plaintiff because it appears to be a "Pre-bill Worksheet" and not a final or formalized accounting of the work Damon billed. *See* Doc. 8, Ex. F. Moreover, the mere existence of billing entries in September and October 2010 do not indicate that the Deters defendants received any monetary benefit. Such allegations fail to rise above the speculative level and do not entitle plaintiff to relief. *Twombly*, 550 U.S. at 555.

from plaintiff.  Accordingly, plaintiff's first amended complaint fails to state a claim for unjust enrichment against the Deters defendants

### D. Plaintiff has failed to allege facts sufficient to state a claim against the Deters defendants for negligence.

Plaintiff's final claim against the Deters defendants is that they were negligent in hiring Damon as they had actual and constructive knowledge that plaintiff was a client of their firm, they knew or should have known that Damon was stealing from clients, and they are responsible for the acts and omissions of their employees.  (Doc. 8, ¶¶ 66-67).  Plaintiff argues that he has adequately pleaded this claim as he alleged that the Deters defendants "failed to exercise due care and breached their duties to Plaintiff . . . by failing to take any steps to protect Plaintiff . . . and instead trying to minimize their own damages resulting from [Damon's] actions."  *Id.* at 69. Such unsupported and conclusory allegations are insufficient to withstand the instant Rule 12(b)(6) motion to dismiss.

The elements of a negligent hiring claim in Ohio are "(1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of such incompetence, (4) the employee's act or omission causing plaintiff's injuries, and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries."  *Evans v. Ohio State Univ.*, 680 N.E.2d 161, 171 (Ohio App. 10 Dist. 1996) (internal citations omitted).  Here, plaintiff has failed to allege sufficient facts to establish the fifth element of the claim - that the Deters defendants' act of hiring Damon was the proximate cause of plaintiff's injuries.

Plaintiff has alleged that he has suffered actual monetary damages stemming from his payments to Damon and damages in the form of lost potential legal awards but for Damon's failure to zealously prosecute plaintiff's claims.  These damages all stem from Damon's alleged

-18-

conduct between December 2009 and August 2010, the period during which that Damon represented plaintiff. The Deters defendants did not hire Damon until September 2010, over a month after plaintiff terminated his professional relationship with Damon and elected to be represented by B&C. As the Deters defendants did not hire Damon until after plaintiff incurred his alleged damages, it is a practical impossibility that the act of hiring Damon was the proximate cause of plaintiff's injuries. Thus, plaintiff's complaint fails to state a claim of negligent hiring against the Deters defendants.

As plaintiff's complaint fails to allege facts sufficient to state claims against the Deters defendants for negligence, unjust enrichment, legal malpractice, or breach of fiduciary duty, the Rule 12(b)(6) motion (Doc. 14) should be granted and plaintiff's claims against the Deters defendants should be dismissed.

## V.     CONCLUSION

For the above reasons, the Court hereby **RECOMMENDS** the following:

(1) Defendant Damon's Motion to Dismiss (Doc. 4) should be **DENIED** as moot;

(2) Defendant Damon's Motion to Dismiss plaintiff's First Amended Complaint (Doc. 10) should be **DENIED**; and

(3) The Deters Defendants' Motion to Dismiss (Doc. 14) should be **GRANTED**.

Date: 2/14/12

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHAEL G. BRAUTIGAM,                       Case No. 1:11-cv-551
      Plaintiff,

                                            Weber, J.
                                            Litkovitz, M.J.

vs.

GEOFFREY P. DAMON, *et al.*
      Defendants

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| **SENDER:** *COMPLETE THIS SECTION* | **COMPLETE THIS SECTION ON DELIVERY** | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br><br>X | ☑ Agent<br>☐ Addressee |
| | B. Received by ( *Printed Name* ) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Michael G. Brautigam<br>798 Clinton Springs Ave<br>#6<br>Cinti, OH 45229 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No | |
| | 3. Service Type<br>☑ Certified Mail    ☐ Express Mail<br>☐ Registered       ☐ Return Receipt for Merchandise<br>☐ Insured Mail     ☐ C.O.D. | |
| | 4. Restricted Delivery? *(Extra Fee)*  ☐ Yes | |
| 2. Article Number<br>(Transfer from service label) | 7003 2260 0002 6723 4545 | |

PS Form **3811**, February 2004          Domestic Return Receipt          102595-02-M-1540