UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL G. BRAUTIGAM,
Plaintiff,

vs.

GEOFFREY P. DAMON, et al.,
Defendants.

Case No. 1:11-cv-551
Spiegel, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

This matter is before the Court on defendant Geoffrey P. Damon's motion for summary judgment on Count Two of the complaint (Doc. 30), plaintiff Michael G. Brautigam's response in opposition (Doc. 32), and defendant's reply memorandum (Doc. 33).

I. Background

The facts giving rise to this dispute are set forth in the undersigned's Report and Recommendation issued on February 14, 2012 (Doc. 19), and will not be repeated here in full. The district judge adopted the Report and Recommendation by Order dated August 1, 2013. (Doc. 45). The Order denied defendant Damon's motions to dismiss the amended complaint[1] and granted a motion to dismiss the amended complaint filed by defendants Eric C. Deters and Eric C. Deters & Associates, leaving defendant Damon as the sole remaining defendant in this lawsuit.

II. Facts

In December 2009, plaintiff secured representation from defendants Damon and the law firm of Butkovich & Crosthwaite Co. L.P.A. (B&C) for the prosecution of two civil lawsuits: a civil lawsuit claiming legal malpractice (Michael G. Brautigam v. Paul L. Hackett III, No.

---

[1] Damon moved to dismiss the amended complaint based on an alleged lack of diversity jurisdiction, on *Younger* abstention principles, and for failure to join an indispensable party. (Doc. 19 at 4-5).

A1001193 (Hamilton County, Ohio Ct. of Com. Pleas)[2]) (*Hackett* case), and a second federal lawsuit brought under 42 U.S.C. § 1983 against a state court judge. (Doc. 32-1, Brautigam Aff., ¶ 1). Defendant Damon had been employed by B&C beginning in January 1, 2009, but was separated from the firm on July 28, 2010. (Doc. 30-1, Damon Decl., ¶ 1). Shortly after his separation from the firm, on August 3, 2010, Damon filed a motion to withdraw as counsel for plaintiff in the *Hackett* case. (*See* Case No. A1001193, 8/3/10 docket entry).

B&C sent a letter to plaintiff dated August 4, 2010, informing plaintiff that defendant Damon was no longer associated with B&C. (Doc. 32-1, Brautigam Aff., ¶ 2; Exh. A). The letter advised plaintiff that he had a choice as to whom would represent him in his cases in the future and that he should indicate whether he preferred to be represented by Damon or by B&C. (*Id.*; Exh. A). Plaintiff indicated his preference for representation by B&C by placing a check next to the firm's name on the letter, and he signed and returned the letter to the law firm on August 31, 2010. (*Id.*).

On August 20, 2010, before plaintiff had returned the letter, defendant Damon prepared and filed a motion for extension of the expert disclosure and expert report deadlines on plaintiff's behalf in the *Hackett* case, which Damon signed as "Trial Attorney for Plaintiff Michael G. Brautigam." (*Id.*, ¶ 4; Exh. C). Thereafter, on November 9, 2010, Judge Dennis Helmick granted Damon's motion to withdraw as trial counsel. (*Id.*, ¶ 5; Exh. D). B&C was subsequently relieved of any obligation to act as trial counsel in the case as a result of the grant of leave to Damon to withdraw as counsel. (*See* Case No. A1001193, 11/16/10 docket entry).

---

[2] "Federal courts may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank,* 417 F.2d 75, 82-83 (6th Cir. 1969)). *See also National Union Fire Ins. Co. v. VP Bldgs., Inc.,* 606 F.3d 835, 839 n.2 (6th Cir. 2010).

### III. Defendant's motion for summary judgment

Defendant Damon moves for summary judgment on Count Two of the complaint for legal malpractice pursuant to Fed. R. Civ. P. 56 on the ground that there are no genuine issues of material fact and he is entitled to summary judgment as a matter of law. (Doc. 30). Damon contends that plaintiff's claim for legal malpractice is governed by the one-year statute of limitations set forth in Ohio Rev. Code § 2305.11(A). According to Damon, the statute of limitations began to run on July 28, 2010, because any attorney-client relationship existing between defendant and plaintiff terminated as of that date. Damon avers that he was separated from B&C on July 28, 2010, and he performed no legal services for plaintiff after that date. (Doc. 30 at 4; Doc. 30-1, Damon Declaration, ¶ 1). Damon asserts that plaintiff acknowledges in the first amended complaint that Damon was separated from his employment with B&C in late July 2010. (Doc. 30 at 3, citing Doc. 8, ¶ 24). Damon further alleges that plaintiff acknowledges in the amended complaint that on August 3, 2010, Damon filed a motion to withdraw in the *Hackett* case alleging a breakdown of the attorney-client relationship, and that plaintiff, by his own admission, was on notice as of that date that the attorney-client relationship was terminated by both parties. (*Id.* at 3, citing Doc. 8, ¶ 27). Damon argues that because plaintiff did not file the complaint in this matter until August 15, 2011, more than one year from the date the parties' attorney-client relationship was terminated, plaintiff's malpractice claim is time-barred.

In response, plaintiff contends that the motion for summary judgment should be denied on the grounds that: (1) the motion is premature because as of the date it was filed, Damon's motions to dismiss the amended complaint were outstanding and plaintiff had not been given an opportunity to conduct discovery in this matter; and (2) if the Court were to address the motion on substantive grounds, the motion is without merit because the action was timely commenced

3

within the applicable one-year limitations period. (Doc. 32). Plaintiff contends that the attorney-client relationship with Damon did not terminate until November 9, 2010, when Judge Helmick granted Damon's motion for leave to withdraw as plaintiff's attorney in the *Hackett* lawsuit. Plaintiff argues that because he filed this action on August 15, 2011, approximately eight months after Judge Helmick issued his order on the motion to withdraw, plaintiff's legal malpractice claim against defendant Damon is not time-barred.

Plaintiff has submitted his affidavit in support of his opposing memorandum. (Doc. 32-1, Brautigam Affidavit). In the affidavit, plaintiff states that on August 31, 2010, he signed the August 4, 2010 letter from B&C, indicating his choice to be represented by B&C instead of Damon. (*Id.*, ¶ 2). Plaintiff has attached the following documents to the affidavit to show that Damon continued to perform legal services for him in the *Hackett* lawsuit following plaintiff's return of the letter: (1) Damon's billing records, which indicate that Damon may have continued to bill time to plaintiff's file through early October 2010 (*Id.*, ¶ 3, Exh. B); (2) a motion for extension of deadlines filed in the *Hackett* case on August 20, 2010, which plaintiff Damon signed as trial attorney for plaintiff (*Id.*, ¶ 4, Exh. C); and (3) a letter dated December 15, 2010, which Damon submitted to the Cincinnati Bar Association in response to a complaint plaintiff filed against him in which Damon states: "I performed legal services for Mr. Brautigam from December 2009 until I was recently permitted to withdraw by Judge Helmick in the case Brautigam v. Hackett, et.al." (*Id.*, ¶ 6, Exh. E).

In reply, defendant Damon argues that plaintiff is barred by his "judicial admissions" and the doctrine of judicial estoppel from asserting in this action that the attorney-client relationship continued beyond August 3, 2010, when plaintiff allegedly disavowed any attorney-client relationship with Damon and the "Damon Law Office." (Doc. 33 at 3-6). Damon alleges that

according to the allegations of the complaint, Damon was separated from his employment with B&C in late July 2010 (*Id.* at 5, citing Doc. 8, ¶ 24); as of August 3, 2010, Damon had filed a motion to withdraw alleging a breakdown of the attorney-client relationship (*Id.*, citing Doc. 8, ¶ 27); as of August 4, 2010, plaintiff had decided to remain represented by the B&C law firm (*Id.*, citing Doc. 8, ¶¶ 28, 29); and plaintiff never consented to, and actively fought, any representation by the "Damon Law Firm" after August 3, 2010, when Damon filed a motion to withdraw (*Id.*, citing Doc. 8, ¶ 27). Damon further alleges that plaintiff testified in the Hamilton County Court of Common Pleas that "no attorney client relationship was ever established with the Damon Law Office" subsequent to July 28, 2010. (*Id.* at 6). Damon therefore contends that by plaintiff's own admission, he was on notice that both parties had terminated the attorney-client relationship as of August 3, 2010. Damon asserts that plaintiff cannot rely on the time records attached to his affidavit to show the attorney-client relationship continued beyond that date because plaintiff alleges that the time records are fraudulent and were not made from contemporaneous time records. (*Id.* at 3). Damon also alleges that the mere fact that he filed documents as counsel in the *Hackett* case after August 3, 2010, does not alter the fact that plaintiff disavowed any attorney-client relationship with Damon after August 3, 2010, because the filings were attributable to the state court's delay in ruling on the motion to withdraw. Defendant argues that because there was no subjective intent to continue the attorney client-relationship beyond August 3, 2010, the attorney-client relationship was terminated as of that date.

## IV. Standard of review

Summary judgment is proper "if the depositions, documents, electronically stored information, affidavits or declarations . . . or other materials" show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56. In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A principle purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

## V. Request for oral argument

The legal and factual issues in this case are not complex and they have been fully briefed by the parties. Pursuant to S. D. Ohio Civ. R. 7.1, the Court therefore finds that oral argument is not "essential to the fair resolution" of this matter and plaintiff's request for same is denied.

## VI. Defendant's motion for summary judgment should be denied.

### A. Plaintiff has not established the need for additional discovery.

Fed. R. Civ. P. 56(d), formerly Rule 56(f), sets forth the proper procedure to be followed when a party finds that additional discovery is necessary to respond to a motion for summary judgment. Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The affidavit or declaration must "indicate to the district court [the party's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park,* 226 F.3d 483, 488 (6th Cir. 2000) (citing *Radich v. Goode,* 866 F.2d 1391, 1393-94 (3d Cir. 1989)). The district court may deny a motion under Rule 56(d) on vagueness grounds even though the parties have had no opportunity to conduct discovery. *CenTra, Inc. v. Estrin,* 538 F.3d 402, 420 (6th Cir. 2008) (citing *Emmons v. McLaughlin,* 874 F.2d 351, 357 (6th Cir. 1989)). Whether or not to grant a request for additional discovery falls within the trial court's discretion. *Egerer v. Woodland Realty, Inc.,* 556 F.3d 415, 426 (6th Cir. 2009).

Plaintiff has not followed the proper procedure in this case for showing that he requires additional discovery to respond to defendant's motion for summary judgment on the statute of limitations issue. Plaintiff makes only a generalized allegation that he has not had the opportunity to conduct discovery, and he has not submitted an affidavit or declaration to indicate what discovery he requires in order to oppose the summary judgment motion. Moreover, plaintiff was able to prepare a response and submit evidentiary materials in opposition to the

7

motion for summary judgment. Accordingly, the motion for summary judgment should not be denied on the ground it is premature.

### B. There is a genuine issue of material fact on the statute of limitations question.

Under Ohio Rev. Code § 2305.11(A), a legal malpractice action must be brought within one year after the cause of action accrued. An action for legal malpractice accrues under § 2305.11(A) and the statute of limitations begins to run "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold*, 538 N.E.2d 398, 399, syll. (Ohio 1989) (applying *Omni-Food & Fashion, Inc. v. Smith*, 528 N.E.2d 941 (Ohio 1988)).

"[T]he question of when an attorney-client relationship for a particular undertaking or transaction has terminated is necessarily one of fact." *Omni-Food & Fashion, Inc.*, 528 N.E.2d at 944. In making this determination for purposes of § 2305.11(A), the filing of a motion to withdraw as required pursuant to the local rules of court is not conclusive. *Smith v. Conley*, 846 N.E.2d 509, 513-14 (Ohio 2006). Conduct by a party or an attorney can terminate the attorney-client relationship for statute of limitations purposes even before a notice of withdrawal is filed. *Wozniak v. Tonidandel,* 699 N.E.2d 555, 558-59 (Ohio App. 8 Dist. 1997) (citing *Erickson v. Misny*, No. 69213, 1996 WL 239883, at *6 (Ohio App. 8 Dist. May 9, 1996)).

The parties' actions determine when the attorney-client relationship was terminated. *Smith*, 846 N.E.2d at 514. *See also Daniel v. McKinney*, 907 N.E.2d 787, 792 (Ohio App. 2 Dist. 2009). "[A]n attorney-client relationship is consensual in nature and the actions of either party

8

that dissolve the essential mutual confidence between attorney and client can signal the termination of the relationship." *Wozniak*, 699 N.E.2d at 558 (attorney-client relationship was terminated when the defendant was informed following a jury verdict that the firm's engagement was over, which was subsequently confirmed in a letter "unequivocally communicat[ing] to plaintiff that any further action in the case would occur without defendant as his attorney") (citing *Brown v. Johnstone*, 450 N.E.2d 693 (Ohio App. 9 Dist. 1982)). *See also Chapman v. Basinger*, 592 N.E.2d 908, 910 (Ohio App. 3 Dist. 1991) ("conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the professional relationship"). However, something beyond the subjective loss of confidence by the client is required for a finding the attorney-client relationship was terminated; instead, there must be "conduct, an affirmative act by either the attorney or the client that signals the end of the relationship." *Mastran v. Marks*, No. 14270, 1990 WL 34845, at *4 (Ohio App. 9 Dist. Mar. 28, 1990). *See also Busacca v. Maguire & Schneider, LLP*, 834 N.E.2d 856, 859 (Ohio App. 11 Dist. 2005) (an attorney-client relationship can terminate based on an "affirmative act" of either the attorney or the client). Under certain circumstances, a letter from an attorney to a client can constitute an affirmative act that terminates the attorney-client relationship. *Wozniak*, 699 N.E.2d at 558 (citing cases). *See also Busacca,* 834 N.E.2d at 859 (citing *Trickett v. Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A.*, No. 2000-P-0105, 2001 WL 1301557, at *3 (Ohio App. 11 Dist. Oct. 26, 2001)).

For a trial court to grant summary judgment based on an affirmative act signaling the end of the attorney-client relationship, "such an act must be clear and unambiguous, so that reasonable minds can come to but one conclusion from it." *Mastran*, 1990 WL 34845, at *4 Otherwise, summary judgment is not warranted. *Id.*

9

Here, there is no clear and unambiguous evidence that the attorney-client relationship between plaintiff and defendant Damon terminated more than one year prior to August 15, 2011, the date plaintiff filed this lawsuit. Initially, the Court notes that Damon filed a motion for leave to withdraw on August 3, 2010, which was not granted until November 9, 2010. (Doc. 32). However, the filing of the motion to withdraw is not determinative of when the attorney-client relationship terminated for purposes of § 2305.11(A). *See Smith*, 846 N.E.2d at 513-14. Rather, the conduct of plaintiff and Damon must be considered in making this determination. *Id. See also Daniel*, 907 N.E.2d at 792.

Although Damon argues that any attorney-client relationship he had with plaintiff terminated on July 28, 2010, the date he was separated from B&C, there is no evidence before the Court that shows either plaintiff or Damon took an affirmative act on that date to terminate the attorney-client relationship. Nor is there clear and unequivocal evidence that the parties had any communication between the date Damon was separated from B&C and the date he filed the motion to withdraw. Damon has not produced evidence that shows plaintiff was aware that Damon intended to file the motion to withdraw on August 3, 2010, or to show what date plaintiff learned of the filing.

Moreover, there is evidence which affirmatively suggests that the attorney-client relationship between Damon and plaintiff continued beyond both the date of Damon's separation from B&C and the filing of the motion to withdraw. Specifically, B&C sent plaintiff a letter dated August 4, 2010, informing him that defendant Damon was no longer with the law firm and expressly offering plaintiff the choice of continued representation by Damon. (Doc. 32-1, Brautigam Aff., ¶ 2, Exh. A). This letter indicates that as of August 4, 2010, the date the letter was prepared, neither Damon nor plaintiff had communicated to the other an intent to terminate

10

the relationship. Although the record does not show what date plaintiff received the letter informing him that Damon had been separated from B&C and offering plaintiff a choice of representation, the date of receipt is not determinative of the timeliness issue. The letter held out the possibility that plaintiff could continue to be represented by Damon, and plaintiff states in his affidavit that he did not sign and return the letter declining that option until August 31, 2010. (*Id.*). Thus, the record does not show that either plaintiff or Damon had "unequivocally communicated" to the other an intention to terminate the attorney-client relationship prior to plaintiff's return of the letter to B&C on that date. *See Wozniak*, 699 N.E.2d at 558.

Based on the undisputed evidence before the Court, the attorney-client relationship did not terminate prior to the date plaintiff signed and returned the letter he received from B&C giving him a choice of representation. Plaintiff's response is the first "unequivocal" communication to defendant that he was terminating the attorney-client relationship. *Id.* According to plaintiff, he did not send the letter to B&C until after August 15, 2010. (Doc. 32-1, Brautigam Aff., ¶ 2). Because there is no evidence to contradict plaintiff's representation, the Court must accept it as true for summary judgment purposes.

Given the Court's determination that the attorney-client relationship was not terminated prior to plaintiff's return of the letter he signed and dated August 31, 2010, declining continued representation by Damon, the Court need not address additional evidence plaintiff has submitted to show the attorney-client relationship continued beyond the end of August 2010, including Damon's billing records which purportedly reflect charges for legal work performed for plaintiff into early October 2010. (Doc. 32-1, Brautigam Aff., Exh. B[3]). Defendant Damon has failed to point to clear and unambiguous evidence showing that the attorney-client relationship terminated

---

[3] In the prior Report and Recommendation, the undersigned noted that the billing sheet on which the time entries are listed appears to be a "Pre-bill Worksheet" which does not necessarily accurately reflect the time Damon charged plaintiff. (Doc. 19 at 17, citing Doc. 8, Exh. F).

11

more than one year prior to the filing of this lawsuit on August 15, 2011. Accordingly, defendant is not entitled to summary judgment on the legal malpractice claim on the ground it is time-barred.

## IT IS THEREFORE RECOMMENDED THAT:

Defendant Damon's motion for summary judgment on Count Two on the complaint (Doc. 30) be **DENIED**.

Date: 8/19/13

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL G. BRAUTIGAM,
    Plaintiff,

vs.

GEOFFREY P. DAMON, et.al,
    Defendants.

Case No. 1:11-cv-551
Spiegel, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Michael Brautigam
   7a8 Clinton Springs Ave.
   #6
   Cincinnati, OH 45229

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   X ☒ Agent
   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7011 3500 0001 5345 9350

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540