UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL G. BRAUTIGAM,
Plaintiff,

vs.

GEOFFREY P. DAMON, et al.,
Defendants.

Case No. 1:11-cv-551
Spiegel, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

This matter came before the Court on defendant Geoffrey P. Damon's motion to dismiss the complaint for failure to satisfy the amount in controversy requirement. (Doc. 63). For the reasons stated below, the Court finds the motion is untimely. However, the Court *sua sponte* determines that subject matter jurisdiction over this case is lacking and recommends that the case be dismissed on this ground.

**I. Background**

The undersigned has issued two prior Reports and Recommendations in this matter, which set forth many of the facts giving rise to this dispute. (Docs. 19, 46). Those facts will not be repeated here in full. The facts pertinent to resolution of the jurisdictional issue raised by defendant's motion to dismiss are set forth below.

In December 2009, plaintiff Michael G. Brautigam secured representation from defendants Geoffrey P. Damon and the law firm of Butkovich & Crosthwaite Co., L.P.A. (B&C) for the prosecution of two civil lawsuits. The first lawsuit was filed on February 9, 2010, against attorneys Paul Hackett III, Monica McPeek and Peter Koenig and their respective law firms in the Hamilton County, Ohio Court of Common Pleas: *Michael G. Brautigam v. Paul L. Hackett III, et al.*, Case No. A 1001193 (hereafter, the "Hackett litigation"). The second lawsuit was a

proposed federal action to be brought against Judge Robert Ruehlman, a Hamilton County Court of Common Pleas judge, under 42 U.S.C. § 1983.  (Doc. 32, Brautigam Aff., ¶ 1).

Defendant Damon filed the complaint in the Hackett litigation as counsel for plaintiff. (Doc. 50, Exh. 1).  The complaint alleged that in November 2007, plaintiff Brautigam had initiated a civil action against the Rose Crest Condominium Association and the individual unit owners in the Hamilton County Court of Common Pleas, Case No. A 0710196 (hereafter, the "Rose Crest litigation").  (*Id.*, ¶ 10).  While that litigation was ongoing, on or about December 4, 2008, Judge Ruehlman (the presiding judge in the Rose Crest litigation) found plaintiff in direct criminal contempt, as a result of which plaintiff was taken into custody and transported to the Hamilton County Justice Center.  (*Id.*, ¶ 11).  Plaintiff alleged that although Hackett entered his appearance to represent plaintiff in the criminal contempt proceeding only, Hackett entered into a settlement agreement in the Rose Crest litigation without plaintiff's authorization that linked plaintiff's appeal of the contempt finding with the Rose Crest litigation.  (*Id.*, ¶¶ 13-18). Pursuant to the settlement agreement, plaintiff agreed to terms he considered "negligible," including the "release" of the defense attorneys in the Rose Crest litigation, McPeek and Koenig, for no consideration and dismissal of his appeal of the criminal contempt charge.  (*Id.*, ¶ 19). Based on these allegations, plaintiff's civil complaint in the Hackett litigation asserted three causes of action against Hackett arising out of the settlement: breach of contract, professional negligence, and breach of fiduciary duty.  Plaintiff sought over $25,000.00 in compensatory damages on each count and an order declaring the purported release of the attorneys in the Rose Crest litigation to be invalid as a product of coercion and duress.

Defendant Damon was eventually permitted to withdraw from representation of plaintiff in the Hackett litigation by Hamilton County Common Pleas Court Judge Dennis Helmick.

(Doc. 32-1, Brautigam Aff., ¶ 5; Exh. D). Thereafter, plaintiff pursued the litigation on his own behalf. By judgment entry dated June 21, 2011, the Hamilton County Court of Common Pleas granted a motion for summary judgment which defendant Hackett had filed on February 2, 2011. Plaintiff, proceeding pro se, pursued an appeal of the trial court's order granting summary judgment in Hackett's favor. The Court of Appeals upheld the trial court's decision in a judgment entry dated February 15, 2012, finding as follows:

> Brautigam has alleged in his complaint that the defendants improperly coerced a settlement in a separate civil action that Brautigam had initiated by aligning the settlement with the resolution of criminal contempt charges that Brautigam had faced. But because Brautigam has not returned the $5,000 that he received as consideration for dismissal of the prior civil action, he may not maintain this subsequent action attacking the settlement and surrounding circumstances . . . The record contains no genuine issues of material fact with respect to the allegations of malpractice . . . The trial court properly granted summary judgment to McPeek, Hackett, and their law offices.

(Doc. 75-1, *Michael Brautigam v. Paul Hackett III, et al.*, Case No. C-110412).

The second civil action for which plaintiff retained defendant Damon, the proposed § 1983 action against Judge Ruehlman, was never filed by Damon.

**II. Defendant Damon's motion to dismiss**

Defendant Damon moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) on the ground the jurisdictional amount for a complaint premised on the federal diversity statute, 28 U.S.C. § 1332, is not satisfied.[1] (Doc. 63). In support of the motion, defendant relies on plaintiff's submission of a Proof of Claim filed on May 23, 2012, in a bankruptcy proceeding defendant had instituted which plaintiff valued at $5,000.00. (*Id.*; Exh. 1). Defendant contends plaintiff is judicially estopped by his submission from placing a higher value on plaintiff's claim

---

[1] The diversity statute, 28 U.S.C. § 1332, requires that "the matter in controversy exceed[ ] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

3

in this action. Defendant argues that the jurisdictional amount is therefore not satisfied, and this Court lacks subject matter jurisdiction over plaintiff's claim.

In response, plaintiff alleges that he limited his Proof of Claim filed with the bankruptcy court to approximately $5,000.00 because he believed that claim was limited to his out-of-pocket damages, which he valued at that amount, and excluded his consequential and special damages. (Doc. 72 at 3). Plaintiff states that less than two months after he filed the Proof of Claim, he filed an adversary proceeding against defendant in the bankruptcy court in which he alleged damages of $6,125.00 in stolen funds and undetermined amounts to be recovered in the Hackett litigation and the federal action that was contemplated against Judge Ruehlman. (*Id*. at 3-4; Exh. A). Plaintiff notes that he sought more than $75,000.00 in the complaint Damon filed on his behalf against Hackett in the Hamilton County Court of Common Pleas, and plaintiff contends that the proposed federal action was to have alleged damages well in excess of $75,000.00. (*Id*. at 4).

Defendant asserts in reply that assuming plaintiff were entitled to a refund of the $6,150.00 he claims defendant owes him, plaintiff's claim nonetheless falls far short of the required $75,000.00 amount in controversy. (Doc. 75). Defendant states that plaintiff pursued the Hackett litigation pro se following defendant's withdrawal as counsel from the case, and plaintiff did not obtain a favorable ruling. (Doc. 75 at 4). To the contrary, the appellate court found plaintiff was barred from pursuing his claims against Hackett and the other defendants named in the Hackett litigation because although plaintiff challenged the Rose Crest settlement and surrounding circumstances in the Hackett litigation, plaintiff had never tendered the $5,000.00 he received as consideration for releasing the Rose Crest defendants and attorneys. (Doc. 75-1- *Michael Brautigam v. Paul Hackett III, et al.*, Case No. C-110412). Defendant

4

further asserts that the contemplated § 1983 action has no value because the case was never instituted and because Judge Ruehlman is immune from civil liability for damages, so that plaintiff would not have recovered any damages against him. (Doc. 75 at 5-6).

### III. Analysis of subject matter jurisdiction

A Rule 12(b)(1) motion asserting a lack of subject matter jurisdiction "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). However, a party does not waive the defense by failing to properly raise it under Rule 12(b). Fed. R. Civ. P. 12(h). Further, even if a party fails to properly assert the defense of lack of subject matter jurisdiction, the Court may *sua sponte* address the question of subject matter jurisdiction pursuant to Rule 12(h)(3), which provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The federal courts always have jurisdiction to determine their own jurisdiction. *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 627-28 (6th Cir. 2009) (citing *United States v. Ruiz,* 536 U.S. 622, 628 (2002); *Lacey v. Gonzales,* 499 F.3d 514, 518 (6th Cir. 2007)). *See also Beck v. Miriani*, 293 F.2d 333, 335 (6th Cir. 1961) (the question of the court's subject matter jurisdiction can be raised at any time).

Because the federal courts are courts of limited jurisdiction, it is incumbent upon the district court to raise the question of subject matter jurisdiction *sua sponte* whenever it appears from the pleadings or otherwise that jurisdiction is lacking. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908). Not only is a court permitted to raise the issue of its subject matter jurisdiction *sua sponte,* it must do so when a question as to its jurisdiction arises. *Clarke v. Mindis Metals, Inc.,* No. 95-5517, 1996 WL 616677, at *3 (6th Cir. Oct. 24, 1996) ("Neither party has raised the jurisdictional issue this case presents, but it is axiomatic that we *must* raise

issues of subject-matter jurisdiction *sua sponte*.") (emphasis added) (citing *Community First Bank v. Nat'l Credit Union Admin.,* 41 F.3d 1050, 1053 (6th Cir. 1994)). Accordingly, the federal court can take notice of an issue as to its subject matter jurisdiction and *sua sponte* dismiss the case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the amount in controversy requirement is not satisfied. *Martin v. Louisville Metro Gov't,* No. 3:08cv-P521-S, 2009 WL 2849570 (W.D. Ky. Sept. 1, 2009).

The amount at issue must exceed $75,000.00 to satisfy the amount in controversy requirement of 28 U.S.C. § 1332(a). As a general rule, the amount plaintiff claims in the complaint controls, "as long as claimed in good faith." *Charvat,* 561 F.3d at 628 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co.,* 303 U.S. at 289. *See also Massachusetts Cas. Ins. Co. v. Harmon,* 88 F.3d 415, 416 (6th Cir. 1996) (the district court should consider the amount alleged in the complaint and should not dismiss a complaint for lack of subject matter jurisdiction "unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount") (quoting *Klepper v. First American Bank,* 916 F.2d 337, 340 (6th Cir. 1990)). *See also Kovacs v. Chesley,* 406 F.3d 393, 395 (6th Cir. 2005) (for purposes of determining the amount in controversy in a case premised on diversity jurisdiction, the sum claimed by plaintiff controls if the claim "is apparently [made] in good faith") (citing *St. Paul Mercury Indemnity Co.,* 303 U.S. 283).

Events that occur subsequent to the institution of the lawsuit which reduce the amount recoverable below the statutory limit do not deprive the court of jurisdiction. *Charvat,* 561 F.3d at 628 (quoting *St. Paul Mercury Indem. Co.,* 303 U.S. at 289). However, dismissal is proper if

the amount alleged in the complaint "was never recoverable in the first instance." *Id*. *See also Jones v. Knox Exploration Corp.,* 2 F.3d 181, 183 (6th Cir. 1993) ("[L]ack of the jurisdictional amount from the outset - although not recognized until later - is not a subsequent change that can be ignored.") (quoting 1 *Moore's Federal Practice* ¶ 0.92[1] (2d ed. 1993)).

The claim will be dismissed if it appears "to a legal certainty" from the face of the pleadings that plaintiff cannot recover the amount claimed, or if it is equally apparent from the proofs that the plaintiff was never entitled to recover that amount. *Charvat,* 561 F.3d at 628 (quoting *St. Paul Mercury Indem. Co.,* 303 U.S. at 289). The "legal-certainty test" is met "when a specific rule of substantive law or measure of damages limits the amount of money recoverable by the plaintiff." *Id.* (citing 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3702, at 98-99 & n. 88 (3d ed. 1998 & Supp. 2008)). Where the type of damages claimed are at least arguably permitted under state law, the amount in controversy requirement is satisfied even though it is unlikely that the plaintiff can recover an amount that satisfies the jurisdictional requirement. *Kovacs,* 406 F.3d at 397 (citing *Worthams v. Atlanta Life Ins. Co.,* 533 F.2d 994, 997 (6th Cir. 1976) ("Absolute certainty is not required. It is sufficient if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount.")).

The party who opposes dismissal of a lawsuit has the burden of proving subject matter jurisdiction. *Charvat,* 561 F.3d at 627 (citing *Lacey,* 499 F.3d at 518) (quoting *GTE North, Inc. v. Strand,* 209 F.3d 909, 915 (6th Cir. 2000)).

### IV. Defendant Damon's motion to dismiss is untimely.

Defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), which defendant filed on October 9, 2013, is untimely. Defendant failed to make the motion before filing his answer to the amended complaint, which plaintiff filed on September 12, 2011. (Doc. 8). Moreover, although defendant filed a motion to dismiss the amended complaint on September 24, 2011, he did not raise the defense of lack of subject matter based on failure to satisfy the jurisdictional amount. (Doc. 10). Nor did defendant raise the defense in either his motion for summary judgment filed on March 1, 2013 (Doc. 30) or his motion for summary judgment filed on September 6, 2013. (Doc. 50).

However, because documentation that has been made part of the record subsequent to the filing of the amended complaint raises an issue as to whether the jurisdictional amount is satisfied, the Court is obligated to address the issue of its subject matter jurisdiction over this dispute. *Louisville & Nashville R.R. Co.*, 211 U.S. 149. The Court will therefore review the pertinent portions of the record to determine whether it appears "to a legal certainty" that plaintiff's claim is for less than the jurisdictional amount. *St. Paul Mercury Indemnity Co.*, 303 U.S. at 289.

### V. Subject matter jurisdiction is clearly absent.

Here, it appears to a legal certainty that plaintiff's claim is for less than the jurisdictional amount. Plaintiff's filings in this lawsuit and his submissions in defendant's bankruptcy case demonstrate that plaintiff alleges three categories of damages: (1) legal fees paid to defendants which have not been refunded to him; (2) monetary losses associated with his potential recovery in the Hackett litigation; and (3) monetary losses associated with his potential recovery in the federal § 1983 action which he contemplated filing against Judge Ruehlman but which defendant

8

Damon never instituted on plaintiff's behalf.[2] Although the merits of a malpractice action under Ohio law do not necessarily depend on the merits of the underlying case, there must be a causal connection between the conduct complained of and the resulting loss which frequently can only be established by providing some evidence of the merits of the underlying claim. *Vahila v. Hall*, 674 N.E.2d 1164, syllabus (Ohio 1997). Here, under the facts alleged in plaintiff's amended complaint, there can be no colorable claim for damages resulting from defendants' legal malpractice, other than out-of-pocket expenses, absent some possibility of success on the merits in the underlying lawsuits.[3]

The first category of damages claimed by plaintiff, out-of-pocket losses, is readily calculated. Plaintiff alleges in the amended complaint that he had paid Damon approximately $16,500.00, of which Damon returned $10,000.00. (Doc. 8, ¶ 60). In his memorandum in opposition to the motion to dismiss, plaintiff alleges he paid defendants a total of $16,125.00 in legal fees, of which plaintiff has recovered only $10,000.00 from defendant Damon, leaving a balance of $6,125.00 in unrecovered legal fees. (Doc. 73 at 2-4). Thus, plaintiff's out-of-pocket damages are just above $6,000.00. This amount falls far short of the jurisdictional amount.

---

[2] The Court rejects defendant Damon's argument that the doctrine of judicial estoppel applies to bar defendant from claiming more than $5,000.00 damages in this proceeding. Judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (citing *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). Although plaintiff filed a "Proof of Claim" with the federal bankruptcy court on May 23, 2012, representing the amount of his claim in this case to be $5,000.00 (Doc. 63, Exh. 1), plaintiff filed an adversary proceeding against defendant Damon in the bankruptcy court less than two months later in which he alleged damages of $6,125.00 in stolen funds (the difference between the amount he paid defendant's law firm B&C less $10,000 defendant reimbursed plaintiff) and additional damages in amounts yet to be determined for the Hackett litigation and the contemplated federal lawsuit against Judge Ruehlman. (Doc. 72 at 2-5; Exh. A). Further, there is nothing in the record before this Court that shows the bankruptcy court adopted the $5,000.00 valuation listed in the Proof of Claim as a preliminary matter or as part of its final disposition of defendant's bankruptcy proceeding.

[3] Although plaintiff named additional defendants in the original complaint filed on August 15, 2011 (Doc. 1), the damages he alleged in the original complaint did not differ from those set forth in the amended complaint (Doc. 8). The Court will therefore focus on the allegations and damages claims of the amended complaint.

The second category of damages, plaintiff's potential recovery in the Hackett litigation, must be valued at $0.00. In the Hackett complaint, plaintiff sought damages of $75,000.00 and an order which declared the release plaintiff had signed in connection with settlement of the Rose Crest litigation to be invalid as a product of coercion and duress. (Doc. 50, Exh. 1-*Brautigam v. Hackett*, Case No. A 1001193). Plaintiff continued to pursue the Hackett litigation after Judge Helmick granted defendant Damon's motion for leave to withdraw as counsel. All claims in the lawsuit were decided against plaintiff and in Hackett's favor. The trial court granted summary judgment in favor of Hackett and the appellate court upheld the trial court's judgment on appeal, finding that plaintiff was not entitled to pursue his malpractice claims against Hackett and that there were no genuine issues of material fact as to the malpractice claims. (Doc. 75-1). Specifically, the appellate court held that because plaintiff had not returned the $5,000.00 he had received as consideration for dismissal of the Rose Crest litigation, plaintiff could not maintain his lawsuit against Hackett and the Rose Crest attorneys which challenged the settlement and the circumstances surrounding the settlement.[4] (Doc. 75-1). Accordingly, because plaintiff unsuccessfully prosecuted an appeal of the Hackett litigation and the case was decided against him on the merits, there is clear proof that plaintiff's malpractice and other claims against Hackett arising out of the settlement of the Rose Crest litigation have no value.

---

[4] The Court of Appeals' decision is well-supported by Ohio law, which holds: "A releasor may not attack the validity of a release for fraud in the inducement unless he first tenders back the consideration he received for making the release." *Berry v. Javitch, Block & Rathbone, L.L.P.*, 940 N.E.2d 1265, 1270 (Ohio 2010) (quoting *Haller v. Borror Corp.*, 552 N.E.2d 207, syllabus ¶ 2 (1990)). *See also Mettke v. Hewlett Packard Co.*, 2:11-CV-00410, 2012 WL 1158629, at *7 (S.D. Ohio Apr. 6, 2012) ("The Ohio Supreme Court has 'long held that an action for fraud in the inducement of a settlement of a tort claim is prohibited unless the plaintiff tenders back the consideration received and rescinds the release.'") (quoting *Berry*, 940 N.E.2d 1265); *Walgreen Co. v. Hummer*, No. 1:10CV2902, 2012 WL 1658680, at *4 (N.D. Ohio May 11, 2012) (quoting *Berry*, 940 N.E.2d 1265) (same).

The third category of damages at issue here is plaintiff's potential recovery in the federal § 1983 action that plaintiff anticipated would be filed on his behalf by defendant Damon against Judge Ruehlman. It is clear this potential lawsuit likewise has no monetary value because plaintiff would have been barred under the doctrine of absolute judicial immunity from recovering any damages against Judge Ruehlman. The doctrine of judicial immunity protects judicial officers from suits seeking money damages and applies even in the face of "allegations of bad faith or malice." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 498-99 (6th Cir. 2011) (quoting *Mireles v. Waco,* 502 U.S. 9, 11 (1991)). Judicial immunity does not apply in only two circumstances: (1) where a judge's actions are not taken in the judge's judicial capacity, and (2) where the judge's actions, although judicial in nature, were taken in the complete absence of all jurisdiction. *Mireles,* 502 U.S. at 11-12 (citations omitted). Here, plaintiff's allegations against Judge Ruehlman are premised on the criminal contempt finding and the judge's actions related to that finding. Plaintiff's allegations demonstrate that Judge Ruehlman's actions were taken in his judicial capacity and that Judge Ruehlman is entitled to absolute immunity from suit in connection with those actions. Accordingly, there was no possibility plaintiff would recover any damages in a § 1983 civil action against Judge Ruehlman.

Thus, plaintiff has not made a colorable claim for damages based on the underlying Hackett litigation and the § 1983 action contemplated against Judge Ruehlman, neither of which provided any potential for recovery. There is no causal connection between the legal malpractice alleged in plaintiff's amended complaint filed in this lawsuit and the damages claimed, with the exception of plaintiff's unreimbursed legal fees of approximately $6,000.00. These damages do not satisfy the amount in controversy requirement.

11

Plaintiff has made claims for grossly exaggerated damage amounts in the amended complaint which bear no rational relationship to the allegations of the amended complaint. Plaintiff requests total compensatory damages in excess of $1,000,000.00; treble damages "pursuant to laws" in an amount to be determined at trial; and $10,000,000.00 in punitive damages, "or to the fullest extent permitted by the State of Ohio." (Doc. 8 at 24). Plaintiff sets forth no basis for a $1,000,000.00 compensatory damages claim, which far exceeds the out-of-pocket expenses he incurred. Nor has plaintiff specified the laws which purportedly entitle him to treble damages. Moreover, plaintiff has not alleged any facts or provided any legal authority whatsoever to show there is any conceivable basis in law or fact for his request of $10,000,000.00 in punitive damages. These exorbitant damage amounts bear no rational relationship to the claims presented in the amended complaint and, as such, were clearly not made in "good faith." *See Worthams*, 533 F.2d at 997 ("The amount that is claimed in good faith controls jurisdiction, unless such amount is merely colorable and beyond reasonable expectation of recovery.") (citations omitted). Accordingly, the amount in controversy requirement is not satisfied, and the Court lacks subject matter jurisdiction over plaintiff's complaint.[5]

---

[5] The undersigned acknowledges that it was assumed for purposes of resolving the motions to dismiss addressed in Doc. 19 that the Court had diversity jurisdiction over this matter. (Doc. 19 at 1). However, the jurisdictional issues raised by the instant motion to dismiss and related documentation submitted by the parties were neither raised by a party nor considered by the Court in connection with the prior Report and Recommendation. Accordingly, the Court's prior assumptions concerning jurisdictional requirements do not constitute the law of the case for purposes of the present Report and Recommendation.

## IT IS THEREFORE RECOMMENDED THAT:

1) This matter be **DISMISSED** for lack of subject matter jurisdiction.

2) The following motions be **DENIED** as moot: defendant's motion for summary judgment (Doc. 50); plaintiff's motion to strike (Doc. 53); plaintiff's motion for sanctions (Doc. 54); plaintiff's motion to amend/correct the complaint (Doc. 57); defendant's motion to dismiss for lack of jurisdiction (Doc. 63); defendant's motion to strike the affidavit of plaintiff and all unauthenticated exhibits (Doc. 69); plaintiff's motion for sanctions (Doc. 73); defendant's motion to stay discovery motions pending disposition of jurisdictional and dispositive motions (Doc. 80); defendant's motion to exclude plaintiff's expert witness reports and testimony (Doc. 81); and defendant's motions for extension of time to submit an expert report (Docs. 82, 90).

Date: 12/31/13

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL G. BRAUTIGAM,
    Plaintiff,

vs.

GEOFFREY P. DAMON, et al.,
    Defendants.

Case No. 1:11-cv-551
Spiegel, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee |
| | B. Received by (Printed Name)    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Michael G. Brautigam<br>798 Clinton Springs Ave.<br>#6<br>Cinti, OH 45229 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered      ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee)   ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7011 3500 0001 5345 9824 |

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540