UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL G. BRAUTIGAM,
     Plaintiff,

vs.

GEOFFREY P. DAMON, et al.,
     Defendants.

Case No. 1:11-cv-551

Black, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

     Michael G. Brautigam, an Ohio resident proceeding pro se, brings this diversity action

pursuant to 28 U.S.C. § 1332(a) against defendants Geoffrey P. Damon and Daryl Crosthwaite.[1]

The matter is before the Court on the following motions, which were filed following remand of

this matter by the United States Court of Appeals for the Sixth Circuit (Doc. 107): (1) defendant

Damon's motion for summary judgment (Doc. 113), plaintiff's memorandum in opposition to the

motion (Doc. 120), and defendant Damon's reply in support of the motion (Doc. 122); (2)

defendant Damon's motion to strike plaintiff's affidavit and all unauthenticated exhibits offered

in opposition to defendant Damon's motion for summary judgment (Doc. 114) and plaintiff's

memorandum in opposition to defendant Damon's motion to strike (Doc. 133); (3) defendant

Damon's motion for extension of time to submit expert report (Doc. 115); (4) defendant

Damon's motion to exclude plaintiff's expert witness reports and testimony (Doc. 116) and

plaintiff's response (Doc. 133); (5) plaintiff's motion for extension of time to file responses to

defendant's motion to strike affidavits and exhibits (Doc. 114) and motion to exclude expert

witness reports and testimony (Doc. 116) (Doc. 118); (6) plaintiff's motion to strike defendant

Damon's motion for summary judgment, and plaintiff's motion for sanctions (Doc. 121); (7)

---

[1] Two parties who were originally named as defendants, Eric C. Deters and Eric C. Deters & Associates ("Deters defendants"), have since been dismissed from the lawsuit.

plaintiff's motion to strike defendant Damon's expert report (Doc. 124), defendant Damon's memorandum in opposition (Doc. 128), and plaintiff's reply in support of the motion (Doc. 131); (8) plaintiff's motion for leave to file a third amended complaint (Doc. 125), defendants Damon and Crosthwaite's memoranda in opposition (Docs. 127, 129), and plaintiff's reply in support of the motion (Doc. 132); (9) defendant Damon's motion for leave to file third-party complaint (Doc. 126), defendant Crosthwaite's memorandum in opposition to the motion (Doc. 139), interested party Medmarc Casualty Insurance Company's ("Medmarc") motion for leave to specially appear to oppose the motion (Doc. 140), Medmarc's response in opposition to defendant Damon's motion (Doc. 141), and defendant Damon's reply in support of the motion (Doc. 143); (10) defendant Damon's motion to dismiss the complaint for lack of subject matter jurisdiction (Doc. 130), and plaintiff's memorandum in opposition to the motion (Doc. 137); (11) plaintiff's motion for sanctions (Doc. 138) and defendant Damon's response in opposition (Doc. 142); and (12) defendant Crosthwaite's motion for summary judgment (Doc. 144), plaintiff's memorandum in opposition to the motion (Doc. 146), and defendant Crosthwaite's reply in support of the motion (Doc. 148).

**I. Introduction**

Plaintiff filed the complaint in this action on August 15, 2011.  (Doc. 1).  Plaintiff filed an amended complaint on September 12, 2011.  (Doc. 8).  Plaintiff asserted claims for breach of fiduciary duty, legal malpractice, unjust enrichment, negligence and conversion against defendants Damon and Crosthwaite and a claim for promissory estoppel against Damon only. Plaintiff requested in excess of $1,000,000 in compensatory damages, $10,000,000 in punitive damages, and other relief.  The pertinent facts are summarized in the Sixth Circuit's remand decision:

Brautigam alleged that he retained attorney Damon, a partner with Butkovich & Crosthwaite Co., LPA ("B&C"), to represent him in two actions: (1) a legal malpractice action against Paul Hackett and others ("Hackett litigation"), and (2) a civil rights action against a judge for "falsely arrest[ing Brautigam] and sentenc[ing Brautigam] to six months in jail." Damon accepted both cases on a contingency fee basis. Brautigam, however, paid Damon $16,500 of which Damon returned $10,000. Damon did not file the civil rights complaint, and Brautigam contends that he has lost his right to recover as a result.

On August 3, 2010, Damon moved to withdraw as Brautigam's counsel in the Hackett litigation. The next day B&C mailed a letter to Brautigam, stating that Damon was no longer associated with B&C and asking him to elect whether he would like B&C to continue representing him in his "case(s)." According to Brautigam, he elected to proceed with B&C. In mid-August, he was advised that B&C would not be proceeding with the litigation and would help Brautigam transition to a new attorney; but instead, B&C abandoned him as a client. In November 2010, Damon's motion to withdraw was granted. That same month, Brautigam contends, he learned that Damon had left B&C and was working for Eric C. Deters & Associates.

(Doc. 107 at 2).

## II. Procedural Background

Prior to the appeal of this matter, defendant Damon filed two motions seeking summary judgment on the ground plaintiff's claims against him were time-barred by the applicable statute of limitations. (Docs. 30, 50). On August 20, 2013, the Magistrate Judge issued a Report and Recommendation on defendant Damon's first motion for summary judgment, which alleged that the second claim in the amended complaint for legal malpractice was time-barred.[2] (Doc. 46). The Report and Recommendation concluded there was "no clear and unambiguous evidence that the attorney-client relationship between plaintiff and defendant Damon terminated more than one year prior to August 15, 2011, the date plaintiff filed this lawsuit." (*Id*. at 10). The Magistrate Judge acknowledged that the parties' conduct must be considered in determining when the attorney-client relationship terminated and found the following acts of the parties to be relevant to this determination:

---

[2] The summary judgment standard is set forth in full in the Report and Recommendation. (Doc. 46 at 5-6).

3

1. Defendant Damon was separated from the law firm of B&C on July 28, 2010.

2. Defendant Damon filed a motion to withdraw on August 3, 2010; however, there was no evidence showing Damon had communicated his intention to file the motion to plaintiff or the date plaintiff learned of the filing.

3. B&C sent plaintiff a letter dated August 4, 2010, informing him that defendant Damon was no longer with the law firm and expressly offering plaintiff the choice of continued representation by Damon.

4. Plaintiff did not return the letter declining the option of continued representation by Damon until August 31, 2010.

(*Id*. at 10-11). The Magistrate Judge did not find any of the above factors, when considered in light of all the evidence of record, to be determinative of when the attorney-client relationship between Damon and plaintiff terminated. (*Id*. at 11). Based on the undisputed evidence before the Court, the Magistrate Judge found that "the attorney-client relationship did not terminate prior to the date plaintiff signed and returned the letter he received from B&C giving him a choice of representation." (*Id*.). The Magistrate Judge therefore recommended that summary judgment on the legal malpractice claim be denied. (*Id*. at 12). The District Judge overruled defendant Damon's objections to the Report and Recommendation (Doc. 49) and adopted the Report and Recommendation by Order dated February 14, 2014. (Doc. 96).

Defendant Damon filed a second motion for summary judgment on September 6, 2013, alleging that all of plaintiff's claims against him sounded in attorney malpractice, his representation met the applicable standard of care, and plaintiff's claims were time-barred under the Ohio statute of limitations governing professional negligence. (Doc. 50). The District Court never addressed the merits of the second motion for summary judgment. Instead, on December 31, 2013, the Magistrate Judge issued a Report and Recommendation recommending that: (1) plaintiff's lawsuit be dismissed for lack of subject matter jurisdiction on the ground the amount in controversy requirement was not satisfied; and (2) the remaining unresolved motions,

including defendant Damon's motion for summary judgment seeking to dismiss all claims against him on statute of limitations grounds, be denied as moot. (Doc. 91). The District Judge adopted the Report and Recommendation, dismissed the case for lack of subject matter jurisdiction, and denied defendant Damon's motion for summary judgment as moot by Order dated April 17, 2014. (Doc. 103).

Plaintiff appealed the District Court's dismissal of the lawsuit. On February 25, 2015, the Sixth Circuit issued a decision: (1) holding that the District Court should not have dismissed the action for lack of subject matter jurisdiction; (2) upholding the dismissal of plaintiff's claims against the Deters defendants for breach of fiduciary duty, legal malpractice, unjust enrichment, and negligence; and (3) remanding the action for further proceedings on the claims against the remaining defendants. (Doc. 107).

After the Court of Appeals remanded the case for further proceedings, defendant Damon filed a motion for summary judgment. (Doc. 113). Defendant Crosthwaite also filed a motion for summary judgment. (Doc. 144). These motions are both ripe for resolution. This Order and Report and Recommendation addresses defendant Damon and Crosthwaite's motions for summary judgment together with all of the pending motions that are before the undersigned.

**III. Pending motions**

**1. Defendant Damon's motion to dismiss the complaint for lack of subject matter jurisdiction (Doc. 130)**

Defendant Damon moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Defendant Damon alleges that plaintiff "admitted under oath that he fraudulently maintained diversity jurisdiction by dismissing, non-diverse parties from the action," specifically Joseph A. Butkovich, the principal for the law firm B&C, and the firm itself. (Doc. 130 at 2, 4). In support of his argument, Damon relies on an excerpt from

5

plaintiff's deposition wherein plaintiff testified that he initially included B&C as a party to the suit but omitted the law firm from his amended complaint so that there would be complete diversity. (*Id*. at 4, citing Exh. A at 41-42).

In response, plaintiff argues that defendant Damon's motion to dismiss is procedurally improper because he filed it after the deadline for the submission of such motions. (Doc. 137). Plaintiff further alleges that Damon attempts to re-argue an issue that was previously decided by the District Court, which found that Joseph Butkovich was not an indispensable party to the lawsuit and denied Damon's motion to dismiss the lawsuit based on the theory plaintiff had failed to join an indispensable party. (*Id*. at 2-3, citing Doc. 45).

Defendant Damon's motion to dismiss should be denied for the reasons set forth in the Report and Recommendation dated February 14, 2012, and the Order of August 1, 2013, adopting the Report and Recommendation. (Docs. 19, 45). Defendant Damon has not presented any new legal arguments or factual evidence to show that the Court should revisit its prior ruling finding that Mr. Butkovich is not an indispensable party to this litigation. Damon alleges that plaintiff admitted at his deposition that he "fraudulently" maintained diversity jurisdiction by dismissing non-diverse parties from the action. However, the deposition testimony on which Damon relies does not pertain to Mr. Butkovich and has no bearing on the Court's determination that Mr. Butkovich was not an indispensable party. (*See* Doc. 130, Exh. A at 41-42). Further, while plaintiff testified that he omitted B&C from the amended complaint to maintain complete diversity (*Id*.), Damon has not presented any evidence or cited any authority that supports a finding plaintiff's action was "fraudulent." Finally, Damon offers no facts or legal authority to support a finding that B&C is an indispensable party to this litigation. Accordingly, defendant Damon's motion to dismiss for lack of subject matter jurisdiction (Doc. 130) should be denied.

### 2. Plaintiff's motion for sanctions (Doc. 138)

Plaintiff moves the Court to sanction defendant Damon for filing the motion to dismiss (Doc. 130) and for "defying this Court, his contempt for judicial economy, his repeated and abusive filings that waste the Court's time and resources, as well as Plaintiff's, with a filing that clearly violates Rule 11." (Doc. 138 at 4). Damon opposes the motion for sanctions on the grounds plaintiff has not cited any authority in support of the motion and Damon has not engaged in any sanctionable conduct. (Doc. 142). Damon alleges the motion to dismiss is timely, the issue of the Court's subject matter jurisdiction can be raised at any time, the Court has inherent authority to reconsider its prior rulings, and both Mr. Butkovich and the law firm of B&C as the employer of defendants Crosthwaite and Damon are non-diverse, indispensable parties. (Doc. 142, citing Exh. 1, Transcript of state court proceedings, *Michael G. Brautigam v. Paul L. Hackett, III, et al.*, Case No. A-1001193, Hamilton County Court of Common Pleas, Sept. 8, 2010).

Plaintiff has not cited supporting facts to show that the imposition of sanctions is warranted. Further, plaintiff has not cited any legal authority to show he is entitled to sanctions under Fed. R. Civ. P. 11 as required by the Local Rules of this Court. *See* S.D. Ohio Civ. R. 7.2(a). In addition, plaintiff has not complied with Rule 11's safe harbor provision, which requires the moving party to serve his motion on the opposing party 21 days before filing the motion with the Court. *See* Fed. R. Civ. P. 11(c)(2); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510-511 (6th Cir. 2002) ("Rule 11 is unavailable where the moving party fails to serve a timely 'safe harbor' letter.") (citing *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997)). For these reasons, plaintiff's motion for sanctions (Doc. 138) should be denied.

### 3. Plaintiff's motion for leave to file a third amended complaint (Doc. 125)

Plaintiff moved for leave to file a third amended complaint on June 12, 2015. (Doc. 125). Plaintiff has attached a proposed amended complaint to the motion. (Doc. 125-1). Plaintiff alleges that subsequent to filing the original complaint on August 15, 2011, the first amended complaint on September 12, 2011, and his motion for leave to file a second amended complaint on September 17, 2013, "the case has been overtaken by events." (Doc. 125 at 2). Plaintiff also alleges that some "minimal discovery" has occurred, which he has incorporated into the third amended complaint. (*Id.*).

Defendants Crosthwaite and Damon oppose plaintiff's motion for leave to file a third amended complaint. (Docs. 127, 129). Defendant Crosthwaite alleges that the proposed amended complaint does not comply with Fed. R. Civ. P. 8 by setting forth a "short and plain statement" of plaintiff's right to relief. (Doc. 127). Defendant Damon alleges that the proposed amended complaint adds nothing of substance to the case and includes no allegations that could not have been added to the complaint much earlier in the litigation. In reply, plaintiff notes that he moved for leave to file a second amended complaint in September 2013, but the Court did not rule on the motion in light of subsequent appellate proceedings. (Doc. 132). Plaintiff alleges that any delay in seeking to amend the complaint was attributable to the appellate proceedings in the Sixth Circuit and the stay of these proceedings for a period of time due to Damon's bankruptcy filing. Plaintiff also alleges that the third amended complaint adds a new fraud count.

The federal rules provide that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). "A district court has discretion in determining whether justice requires that [an] amendment be allowed." *Greenberg v. Life Ins. Co. of Virginia*, 177

F.3d 507, 522 (6th Cir. 1999) (citing *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir.

1986)). Factors relevant to the Court's decision include undue delay in filing, lack of notice to

the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by

previous amendments, undue prejudice to the opposing party, and futility of amendment. *Coe v.*

*Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.

1994)). Delay alone is an insufficient basis upon which to deny a motion to amend. *Duggins v.*

*Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

Applying the relevant factors in the present case, plaintiff should not be granted leave to

file a third amended complaint. First, the amendment would be futile. Plaintiff does not explain

the relevance of information included in the proposed amendment regarding Damon's theft

conviction and the loss of his law license to plaintiff's legal malpractice claims against Damon

and Crosthwaite. Further, although plaintiff states that the proposed amended complaint includes

a new fraud claim, the Court has found that plaintiff's fraud claims are subsumed by his legal

malpractice claim. Plaintiff has not shown that the fraud claim he proposes to add is

substantively different from his legal malpractice claim and would not be subsumed by that

claim. Second, granting plaintiff leave to amend the complaint at this late stage of the

proceedings would unduly prejudice defendants. This case has been pending for over four years.

While plaintiff is not responsible for this inordinate delay, neither is plaintiff entitled to further

prolong the litigation by amending the complaint at this point.[3] Motions for summary judgment

---

[3] Plaintiff filed the original complaint on August 15, 2011, and the first amended complaint on September 12, 2011. (Docs. 1, 8). The matter was stayed from March 2012 until March 2013 due to defendant Damon's pending bankruptcy proceedings. (Docs. 26, 29). Plaintiff filed a motion to amend the complaint approximately six months later on September 17, 2013. (Doc. 57). The motion for leave to file a second amended complaint was denied as moot when the District Judge dismissed the complaint for lack of subject matter jurisdiction. (Doc. 103). This matter was pending on appeal from April 2014 until April 2015, when the Sixth Circuit reversed the District Court's opinion dismissing the case and issued its mandate. (Docs. 107, 108). Defendant Damon filed a motion for summary judgment on May 18, 2015 (Doc. 113), after which plaintiff filed his motion for leave to file a third amended complaint. (Doc. 125).

have been filed by both defendants and are pending before the Court.  To delay resolution of the motions would not be fair to defendants.  For these reasons, plaintiff's motion for leave to file a third amended complaint (Doc. 125) should be denied.

**4.  Defendant Damon's motion for leave to file a third-party complaint (Doc. 126) and Medmarc's motion to specially appear for the purpose of opposing defendant's motion (Doc. 140)**

Defendant Damon moves for leave to file a third-party complaint against his former employer, Butkovich & Associates, Co., LPA, dba Butkovich & Crosthwaite Co., LPA, and Medmarc, the firm's professional liability carrier.  (Doc. 126).  Damon seeks to assert claims for contribution, indemnification, *respondeat superior*, and breach of duty to defend.  Damon alleges that B&C assured him that he would be insured by a duly authorized professional liability carrier.  Damon alleges it is evident that Medmarc's duty to defend was triggered because the principals of B&C were named as defendants in the lawsuit.  (*Id*. at 3).  Damon alleges that Medmarc has breached its duty to defend him and indemnify him.  (*Id*.).  Damon seeks a court order requiring Medmarc to provide a defense immediately and to compensate Damon for the quantum meruit value of his legal services, which exceeds $25,000.  (*Id*.).  Damon further alleges that plaintiff has testified that he viewed B&C as the law firm representing him, and under principles of *respondeat superior* B&C is liable for the negligence of its employees, including Damon.  (*Id*. at 2-3).  Damon has attached a proposed third-party complaint to his motion.  (Doc. 126-1).

Defendant Crosthwaite opposes defendant Damon's motion.  (Doc. 139).  Crosthwaite argues there is no justification for Damon's delay in seeking to file a third-party complaint that adds a new party to the lawsuit, there is no valid basis for the proposed complaint, and allowing Damon to file a third-party complaint at this late stage of the lawsuit would unduly delay the

proceedings. Medmarc moves to specially appear to oppose defendant Damon's motion (Doc. 140), and its motion is hereby granted as unopposed. Medmarc argues that Damon's motion should be denied because it is neither timely nor based on newly-discovered facts; it unnecessarily complicates the case by raising contractual issues that are unrelated to plaintiff's claims against Damon; granting Damon leave to add a new party at this late stage of the litigation would prejudice Medmarc; and the proposed third-party claims have no merit. (Doc. 141).

In reply, defendant Damon alleges that the claims in the third-party complaint are "derivative in nature and do not introduce any new facts into this case." (Doc. 143). Defendant further alleges that he has a valid claim against B&C for *respondeat superior* liability. Finally, defendant alleges the third-party complaint is not barred by laches or the statute of limitations.

Under the federal rules, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a)(1). Pursuant to Fed. R. Civ. P. 14(a)(1), leave to file a third-party complaint under Rule 14(a) is committed to the sound discretion of the Court. *Stevens v. Lazzarini*, Nos. 2:99-cv-1057, 2:01-cv-285, 2002 WL 1584277, at *1 (S.D. Ohio Mar. 23, 2002) (citing *General Elec. Co. v. Irvin*, 274 F.2d 175, 178 (6th Cir. 1960)). "[T]he timeliness of the motion is an urgent factor governing the exercise of such discretion." *Id*. (quoting *Irvin*, 274 F.2d at 178). As a general rule, a timely motion for leave to implead a third-party pursuant to Fed. R. Civ. P. 14(a)(1) should be granted "unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Trane U.S. Inc. v. Meehan*, 250 F.R.D. 319,

322 (N.D. Ohio 2008) (quoting *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 240

(S.D. N.Y. 2004) (internal quotations omitted)).

Defendant Damon's motion for leave to file a third-party complaint should be denied.

Although plaintiff instituted this lawsuit on August 15, 2011, defendant Damon did not seek

leave to file the third-party complaint adding new parties and claims until nearly four years later

on June 22, 2015. (Doc. 126). This was approximately two weeks before the discovery deadline

expired and approximately two months before expiration of the dispositive motion deadline.

(Doc. 112). Defendant Damon alleges that the third-party complaint is not based on new facts.

(Doc. 143 at 1). Accepting his allegation as true, there is no justification for waiting nearly four

years and shortly before expiration of the discovery and dispositive motion deadlines to seek

leave to file the third-party complaint. *See Diar v. Genesco, Inc.*, 102 F.R.D. 288, 289 (N.D.

Ohio 1984) (denying motion for leave to file third-party complaint as untimely where it was filed

two years after complaint was filed). Therefore, Damon's motion should be denied on timeliness

grounds.

Although this undue and unexplained delay is sufficient justification in and of itself for

denying Damon's motion, there are additional reasons the motion should be denied. Damon

does not appear to have a valid claim against either B&C or Medmarc. Defendant Damon claims

that B&C is liable to him for contribution and indemnification under a theory of *respondeat*

*superior* and that Medmarc is liable to B&C for indemnification on the theory it breached a duty

to defend Damon against plaintiff's claims in this lawsuit. However, any claim against B&C

based on a theory of *respondeat superior* liability belongs to plaintiff, not defendant Damon.

Further, defendant Damon's proposed claim against Medmarc for breach of the duty to defend is

based on a different legal theory and different factual allegations than is plaintiff's claim for

legal malpractice against defendant Damon. Thus, plaintiff's third-party complaint is not properly brought under Rule 14(a).

Further, adding these new claims and parties to the case at this juncture would "unduly complicate the trial." *See Trane U.S. Inc.*, 250 F.R.D. at 322. The new claims would entail additional discovery and require extension of the discovery and dispositive motion deadlines.

Thus, because Damon unreasonably delayed filing the third-party complaint, the third-party complaint does not satisfy Rule 14(a), addition of the new parties and claims at this late date would unduly complicate the trial, and the third-party claims would further delay these already protracted proceedings, defendant Damon's motion for leave to file a third-party complaint (Doc. 126) should be denied.

**5. Motions related to the submission of expert witness reports (Docs. 115, 116, 118, 124)**

Defendant Damon filed a motion for a 20-day extension of time to submit an expert report on May 18, 2015. (Doc. 115). The motion is denied as moot in light of Damon's notice that he served the expert report on plaintiff. (Doc. 123). Plaintiff filed a motion for an extension of time on May 20, 2015, to file responses to defendant Damon's motion to strike (Doc. 114) and motion to exclude (Doc. 116). (Doc. 118). The motion is denied as moot as plaintiff has since filed a response to both motions. (Doc. 133).

Defendant Damon moves the Court for an order excluding all expert witness reports and expert testimony that plaintiff proposes to offer on the ground plaintiff failed to submit an expert report by the deadline of October 31, 2013, established in the Court's Scheduling Order. (Doc. 116). Plaintiff states that he responded to this motion in an earlier filing. (Doc. 133). For the reasons discussed below, the Court finds that plaintiff's claims are barred by the statute of limitations. Therefore, defendant Damon's motion to exclude any expert testimony offered by

13

plaintiff (Doc. 116) should be denied as moot.  Similarly, plaintiff's motion to strike the expert

report submitted by defendant Damon which designates defendant himself as the expert (Doc.

124) should be denied as moot.[4]

### 6. Plaintiff's motion to strike defendant Damon's motion for summary judgment and for sanctions (Doc. 121)

Plaintiff moves to strike defendant Damon's motion for summary judgment (Doc. 113)

and for sanctions against defendant Damon on the grounds: (1) the motion is duplicative of

defendant's second motion for summary judgment (Doc. 50), which the District Court previously

denied (Doc. 103); (2) the motion does not comply with the District Judge's Standing Order

governing the filing of summary judgment motions in civil cases because it does not include a

statement of proposed undisputed facts; and (3) the filing violates the Magistrate Judge's

directive to the parties at the post-remand Scheduling Conference to re-file only those motions

that had not yet been decided.  (Doc. 121).  Plaintiff moves the Court to strike the summary

judgment motion and to sanction defendant Damon by ordering him to pay plaintiff "attorney

fees" for the time spent in responding to the motion.  (*Id*. at 3).

Plaintiff's motion is not well-taken.  For the reasons discussed below, reconsideration of

the District Court's prior summary judgment ruling is warranted in light of the Sixth Circuit's

decision on appeal.  Further, the motion for summary judgment has been referred to the

undersigned Magistrate Judge, and the District Judge's Standing Order governing the filing of

summary judgment motions therefore does not apply.  Accordingly, the Court will deny

---

[4] Even if plaintiff's claims were not barred by the statute of limitations, and assuming a party to a lawsuit can provide expert testimony on his own behalf, defendant's "expert" report must nonetheless be excluded from evidence because the report is patently deficient.  Defendant Damon's "expert" report does not include the information required under Fed. R. Civ. P. 26(a)(2)(B) but instead sets forth Damon's conclusory and unsupported arguments in opposition to plaintiff's claims.  Further, the report includes no information showing that defendant Damon is qualified to render a *reliable* opinion based on sufficient facts or data and the application of accepted methodologies. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152-53 (1999).

plaintiff's motion to strike defendant Damon's motion for summary judgment and for sanctions. (Doc. 121).

### 7. Defendant Damon's motion to strike plaintiff's affidavit and all unauthenticated exhibits offered in opposition to Damon's motion for summary judgment (Doc. 114)

Defendant Damon moves the Court to strike plaintiff's affidavit and all unauthenticated exhibits plaintiff has submitted in opposition to Damon's motion for summary judgment "pursuant to Rule 12 of the Federal Rules of Civil Procedure." (Doc. 114 at 1). Damon alleges that the affidavit must be stricken because it includes improper legal arguments, conclusory allegations, factually unsupported and self-serving statements, inferences or opinions not based on observations or other first-hand experiences, mere speculation and conjecture, and inadmissible hearsay. (*Id*. at 2-3). Plaintiff asserts that he has previously responded to defendant's motion to strike. (Doc. 133).

Pursuant to Fed. R. Civ. P. 12, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Damon does not seek to strike matter from a pleading. Damon has not cited any other rule or authority for striking an entire affidavit or exhibits on the grounds asserted. The Court will therefore deny defendant Damon's motion to strike affidavits and unauthenticated exhibits. (Doc. 114). However, in ruling on the summary judgment motion, the Court will not consider portions of the affidavit that do not comply with Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). The Court likewise will not consider exhibits that would not be admissible into evidence. *Saleh v. City of Warren, Ohio*, 86 F. App'x 866, 868 (6th Cir. 2004) (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("[I]t is well settled that only admissible

evidence may be considered by the trial court in ruling on a motion for summary judgment.")
(citations omitted)).

### 8. Defendant Damon's motion for summary judgment (Doc. 113)

### A. The parties' positions

Defendant Damon moves for summary judgment on all claims. Damon alleges that
plaintiff's claims for breach of fiduciary duty, unjust enrichment, negligence, promissory
estoppel and conversion are subsumed by plaintiff's legal malpractice claim and are barred by
the applicable one-year statute of limitations for legal malpractice. Damon also argues that
plaintiff cannot succeed on his legal malpractice claim because there is no dispute that Damon's
representation of plaintiff met the applicable standard of care. Damon further contends that for
purposes of his statute of limitations defense, plaintiff is judicially estopped by representations
he made during proceedings before the Hamilton County, Ohio, Court of Common Pleas from
alleging that the parties' attorney-client relationship extended beyond the dates Damon was
separated from his employment with B&C and filed his motion to withdraw as attorney for
plaintiff, which occurred on July 28 and August 3, 2010, respectively. (*See* Doc. 113-1 at 197-
200; Exh. 4).

Plaintiff opposes defendant Damon's motion on the grounds stated in his motion to strike
the summary judgment motion, wherein plaintiff alleges Damon's motion is duplicative of his
second motion for summary judgment (Doc. 50), it does not comply with the District Judge's
Standing Order governing the filing of summary judgment motions in civil cases, and it violates
the Magistrate Judge's directive to re-file only those motions that had not yet been decided.
(Doc. 120). Plaintiff has attached his response to Damon's prior motion for summary judgment

in the event the Court considers Damon's motion for summary judgment on the merits. (Doc. 120, Exh. A). Plaintiff requests oral argument on the motion for summary judgment.

In reply, defendant Damon alleges that the statute of limitations issue remains unresolved; plaintiff cannot establish a breach of the standard of care because he admittedly does not intend to offer any expert testimony on his behalf; and plaintiff's references to Damon's criminal and ethical issues are not sufficient to raise a genuine issue of material fact on plaintiff's legal malpractice claim. (Doc. 122).

### B. Plaintiff's request for oral argument

The legal and factual issues involved in this case are not complex and they have been fully briefed by the parties. Pursuant to S.D. Ohio Civ. R. 7.1, the Court therefore finds that oral argument is not "essential to the fair resolution" of this case and plaintiff's request for same is denied.

### C. Resolution

### i. Law of the case doctrine/mandate rule

Defendant Damon's motion for summary judgment raises the issue of whether plaintiff's claims are barred by the statute of limitations. This is an issue which both the District Court and the Court of Appeals in its decision remanding the case for further proceedings have addressed. (Docs. 46, 96, 107). The undersigned found as follows in the Report and Recommendation issued on August 20, 2013:

> Here, there is no clear and unambiguous evidence that the attorney-client relationship between plaintiff and defendant Damon terminated more than one year prior to August 15, 2011, the date plaintiff filed this lawsuit. Initially, the Court notes that Damon filed a motion for leave to withdraw on August 3, 2010, which was not granted until November 9, 2010. (Doc. 32). However, the filing of the motion to withdraw is not determinative of when the attorney-client relationship terminated for purposes of § 2305.11(A). *See Smith* [*v. Conley*], 846 N.E.2d [509,] 513-14 [(Ohio 2006)]. Rather, the conduct of plaintiff and Damon

must be considered in making this determination.  *Id*.  *See also Daniel* [*v. McKinney*], 907 N.E.2d [787,] 792 [(Ohio App. 2nd Dist. 2009)].

Although Damon argues that any attorney-client relationship he had with plaintiff terminated on July 28, 2010, the date he was separated from B&C, there is no evidence before the Court that shows either plaintiff or Damon took an affirmative act on that date to terminate the attorney-client relationship.  Nor is there clear and unequivocal evidence that the parties had any communication between the date Damon was separated from B&C and the date he filed the motion to withdraw.  Damon has not produced evidence that shows plaintiff was aware that Damon intended to file the motion to withdraw on August 3, 2010, or to show what date plaintiff learned of the filing.

Moreover, there is evidence which affirmatively suggests that the attorney-client relationship between Damon and plaintiff continued beyond both the date of Damon's separation from B&C and the filing of the motion to withdraw.  Specifically, B&C sent plaintiff a letter dated August 4, 2010, informing him that defendant Damon was no longer with the law firm and expressly offering plaintiff the choice of continued representation by Damon.  (Doc. 32-1, Brautigam Aff., ¶ 2, Exh. A).  This letter indicates that as of August 4, 2010, the date the letter was prepared, neither Damon nor plaintiff had communicated to the other an intent to terminate the relationship.  Although the record does not show what date plaintiff received the letter informing him that Damon had been separated from B&C and offering plaintiff a choice of representation, the date of receipt is not determinative of the timeliness issue.  The letter held out the possibility that plaintiff could continue to be represented by Damon, and plaintiff states in his affidavit that he did not sign and return the letter declining that option until August 31, 2010.  (*Id*.).  Thus, the record does not show that either plaintiff or Damon had "unequivocally communicated" to the other an intention to terminate the attorney-client relationship prior to plaintiff's return of the letter to B&C on that date.  *See Wozniak* [*v. Tonidandel*,] 699 N.E.2d [555,] 558 [(Ohio App. 8th Dist. 1997)].

Based on the undisputed evidence before the Court, the attorney-client relationship did not terminate prior to the date plaintiff signed and returned the letter he received from B&C giving him a choice of representation.  Plaintiff's response is the first "unequivocal" communication to defendant that he was terminating the attorney-client relationship.  *Id*.  According to plaintiff, he did not send the letter to B&C until after August 15, 2010.  (Doc. 32-1, Brautigam Aff., ¶ 2).  Because there is no evidence to contradict plaintiff's representation, the Court must accept it as true for summary judgment purposes.

Given the Court's determination that the attorney-client relationship was not terminated prior to plaintiff's return of the letter he signed and dated August 31, 2010, declining continued representation by Damon, the Court need not address additional evidence plaintiff has submitted to show the attorney-client relationship

continued beyond the end of August 2010, including Damon's billing records
which purportedly reflect charges for legal work performed for plaintiff into early
October 2010. (Doc. 32-1, Brautigam Aff., Exh. B).* Defendant Damon has
failed to point to clear and unambiguous evidence showing that the attorney-client
relationship terminated more than one year prior to the filing of this lawsuit on
August 15, 2011. Accordingly, defendant is not entitled to summary judgment on
the legal malpractice claim on the ground it is time-barred.

(Doc. 46 at 10-12).

The District Judge adopted the Report and Recommendation, finding there was no

evidence either party had "unequivocally communicated" to the other an intention to terminate

the attorney-client relationship prior to plaintiff's return of the termination letter to B&C. (Doc.

96 at 4). The District Judge found there was no evidence that plaintiff knew defendant Damon

had filed a motion to withdraw as of August 3, 2010; the letter plaintiff received from B&C

dated August 4, 2010, indicated plaintiff could have chosen continued representation by Damon;

and plaintiff's affidavit showed that he knew he had until August 31, 2010, to choose how to

proceed. (*Id*.).

In its decision on appeal, the Court of Appeals addressed termination of the attorney-

client relationship between plaintiff and Damon in the context of whether the District Court

properly dismissed plaintiff's claims against the Deters defendants. (Doc. 107 at 5). The Court

of Appeals found as follows:

The district court dismissed Brautigam's claims against the Deters defendants for
breach of fiduciary duty, legal malpractice, unjust enrichment, and negligence.
On appeal, Brautigam argues that his claims should not have been dismissed
because he continued to receive legal bills from Damon while Damon was
employed at Eric C. Deters & Associates, and Damon corresponded with him
using Eric C. Deters & Associates' stationery. The attorney-client relationship is
terminated when there is an affirmative act by either party signaling the end of the
relationship. *Flynt v. Brownfield, Bowen & Bally*, 882 F.2d 1048, 1051 (6th Cir.
1989); *Duvall v. Manning*, No. 2010-L-069, 2011 WL 2119912, at *4 (Ohio Ct.

---

* In the prior Report and Recommendation, the undersigned noted that the billing sheet on which the time entries are
listed appears to be a "Pre-bill Worksheet" which does not necessarily accurately reflect the time Damon charged
plaintiff. (Doc. 19 at 17, citing Doc. 8, Exh. F).

App. May 27, 2011). In August 2010, B&C notified Brautigam that Damon had left B&C, and Brautigam stated that he wanted to continue being represented by B&C. That same month Damon filed a motion to withdraw as Brautigam's counsel and mailed a copy of that motion to Brautigam. Damon and Brautigam both took affirmative acts that terminated the attorney-client relationship. Damon did not start working for Eric C. Deters & Associates until September 2010 – after Damon and Brautigam had severed their relationship.

(*Id.*).

The threshold issue before the Court is how these prior rulings impact the Court's resolution of Damon's pending motion for summary judgment. For the reasons discussed below, the Court finds it is bound by the Court of Appeals' findings as to when the attorney-client relationship between plaintiff and Damon terminated to hold that plaintiff's claims against Damon are barred by the statute of limitations.

Two doctrines are implicated in the resolution of defendant Damon's motion for summary judgment: the law of the case doctrine and the mandate rule. The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (citing *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (quoting *Coal Res., Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 766 (6th Cir. 1989) (citations omitted)). *See also Westside Mothers*, 454 F.3d at 538 (the law of the case doctrine is limited to those issues decided in the earlier appeal, and the district court may therefore consider those issues not decided expressly or impliedly by the appellate court). The doctrine applies equally to the decisions issued by coordinate courts in the same case and to the court's own

decisions. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988). "Law of

the case directs a court's discretion, it does not limit the tribunal's power." *Association of*

*Frigidaire Model Makers v. General Motors Corp.,* 51 F.3d 271 (table), 1995 WL 141344, at *4

(6th Cir. March 31, 1995) (quoting *Arizona,* 460 U.S. at 618 & n.8) (citations omitted); *see also*

*Gillig v. Advanced Cardiovascular Sys., Inc.,* 67 F.3d 586, 589-90 (6th Cir. 1995). Nonetheless,

although the doctrine does not foreclose a district court from reconsidering its prejudgment

orders, "it does cast an air of caution on such an exercise by a judicial officer." *Waste Mgmt. of*

*Ohio, Inc. v. City of Dayton,* 169 F. App'x 976, 985 (6th Cir. 2006) (quoting *Gillig,* 67 F.3d at

589-90). Further, "when a case is appealed and remanded, the decision of the appellate court

establishes the law of the case and ordinarily will be followed by both the trial court on remand

and the appellate court in any subsequent appeal." *Id.* (citing *Rohrbaugh v. Celotex Corp.*, 53

F.3d 1181, 1183 (10th Cir. 1995)).

The mandate rule is a specific application of the law of the case doctrine. *Id.* at 986.

Although the same court may revisit issues previously decided by it, the lower court cannot

revisit issues of law that have been determined by the appellate court. *Id.* "The basic tenet of the

mandate rule is that a district court is bound to the scope of the remand issued by the court of

appeals." *Id.* (citing *Scott,* 377 F.3d at 570). "When a superior court determines the law of the

case and issues its mandate, a lower court is not free to depart from it." *Id.* (citing *Litman v.*

*Moore*, 825 F.2d 1506 (11th Cir. 1987)). *See also McMurtry v. Paul Revere Life Ins. Co.*, 67 F.

App'x 290, 295 (6th Cir. 2003) (when the appellate court has remanded a case, "the trial court is

bound to 'proceed in accordance with the mandate and law of the case as established by the

appellate court.'") (quoting *Hanover Ins. Co.*, 105 F.3d at 312) (quoting *Petition of U.S. Steel*

*Corp.*, 479 F.2d 489, 493 (6th Cir. 1973)). The trial court must "implement both the letter and

the spirit" of the appellate court's mandate, "taking into account the appellate court's opinion

and the circumstances it embraces." *Westside Mothers,* 454 F.3d at 538 (quoting *Brunet v. City*

*of Columbus,* 58 F.3d 251, 254 (6th Cir. 1995)).  There are limited exceptions to the mandate

rule that apply in circumstances such as when the evidence on a subsequent trial is substantially

different, controlling authority has since made a contrary decision of the law applicable to such

issues, or the appellate court decision was clearly erroneous and would work a manifest injustice.

*Waste Mgmt. of Ohio, Inc.,* 169 F. App'x at 987 (citing *McIlravy v. Kerr-McGee Coal Corp.,* 204

F.3d 1031, 1035 (10th Cir. 2000) (internal citations omitted)).

Applying these principles here, this Court is bound by the law of the case doctrine and,

more precisely, the mandate rule to find that plaintiff's claim for legal malpractice against

defendant Damon is barred by the statute of limitations.  The Court of Appeals' decision

reversing and remanding the District Court's prior decision dismissing this case includes legal

and factual findings that dictate this outcome.  Specifically, the Court of Appeals set forth the

following legal principle in its decision: "The attorney-client relationship is terminated when

there is an affirmative act by either party signaling the end of the relationship."  (Doc. 107 at 5,

citations omitted).  The Court of Appeals then specified the "affirmative acts that terminated the

attorney-client relationship" taken by both plaintiff and Damon in this case.  (*Id.*).  According to

the Court of Appeals, the "affirmative acts" that Damon took which terminated the attorney-

client relationship were (1) filing a motion to withdraw as plaintiff's attorney in the Hamilton

County Court of Common Pleas in the underlying litigation, and (2) mailing a copy of the

motion to withdraw to plaintiff.[5]  (*Id*.).  The Court of Appeals did not indicate that either receipt

of the motion to withdraw by plaintiff or notice to plaintiff of the filing was relevant to the

determination of when the termination occurred.  Nor did the Court of Appeals suggest that

B&C's letter offering plaintiff the choice of continued representation by either Damon or the

firm altered the significance of Damon's acts of filing and mailing the motion to withdraw.

Thus, the Court of Appeals' decision allows but one conclusion: the attorney-client relationship

between plaintiff and defendant Damon terminated when defendant Damon filed and mailed the

motion to withdraw as plaintiff's counsel.  Notwithstanding any prior determination made at the

District Court level, the undersigned is bound by the mandate rule to hold that no further act or

notice was required to terminate the attorney-client relationship and no action taken by B&C

created any ambiguity as to Damon's affirmative acts.  The Court of Appeals' decision makes

clear that Damon's affirmative acts of filing and mailing the motion to withdraw were sufficient

to terminate the attorney-client relationship.

In addition to the Court of Appeals' explicit language specifying the affirmative acts of

the parties that terminated the attorney-client relationship, the cases on which the Court of

Appeals relied leave no doubt as to the import of the Court of Appeals' decision.  The cited

cases hold that only one party need take an affirmative act to terminate the attorney-client

relationship.  (*Id*., citing *Flynt v. Brownfield, Bowen & Bally*, 882 F.2d 1048, 1051 (6th Cir.

1989) ("the attorney-client relationship is consensual in nature and the actions of either party can

---

[5] In the motion, Damon made clear that he was terminating the relationship by unequivocally stating:

> There has been a breakdown in the attorney client relationship, which has led counsel to file this [Motion].  It is not possible for the undersigned counsel to continue to represent the Plaintiff due to the breakdown in the attorney-client relationship.  Plaintiff has been highly critical of the undersigned counsel's performance and has repeatedly indicated his dissatisfaction with the filings submitted on behalf of the Plaintiff.  It is not possible to continue with the representation under these circumstances.

*Michael G. Brautigam v. Paul L. Hackett, III, et al*., Case No. A1001193 (11/16/10).

affect its continuance"); *Duvall v. Manning*, No. 2010-L-069, 2011 WL 2119912, at \*5 (Ohio

App. 11th Dist. May 27, 2011) (an "affirmative act by either the attorney or the client that signals

the end of the relationship" determines whether the attorney-client relationship has been

terminated)).  The Court in *Duvall* held that the attorney's filing of a motion to withdraw

constituted a "clear and unambiguous affirmative act[] from which reasonable minds could come

to but one conclusion," i.e., the attorney-client relationship terminated on the date the attorney

filed the motion to withdraw.  *Duvall*, No. 2010-L-069, 2011 WL 2119912, at \*7.  When these

cases are read together with the Court of Appeals' explicit language, the only permissible

conclusion is that Damon's filing and mailing of the motion to withdraw were affirmative acts

that terminated the attorney-client relationship with plaintiff.

Hamilton County court records show that plaintiff filed the "Motion for Leave to

Withdraw as Trial Attorney for Plaintiff" and served it on plaintiff on August 3, 2010.  *See*

*Michael G. Brautigam v. Paul L. Hackett, III, et al.*, Case No. A1001193 (Helmick, J.).  This

was more than one year before plaintiff instituted this lawsuit on August 15, 2011.  (Doc. 1).

Because plaintiff filed his legal malpractice claim against Damon more than one-year after the

parties' attorney-client relationship terminated, plaintiff's legal malpractice claim is time-barred

by the one-year statute of limitations that governs professional malpractice claims in Ohio.  *See*

Ohio Rev. Code § 2305.11.  The legal malpractice claim should be dismissed as untimely.

### ii. *Plaintiff's remaining claims against defendant Damon*

In addition to his claim for legal malpractice, plaintiff brings claims against defendant

Damon for breach of fiduciary duty, unjust enrichment, negligence, conversion and promissory

estoppel.  Defendant Damon alleges these causes of action are subsumed by plaintiff's legal

malpractice claim and are governed by the same one-year statute of limitations set forth in Ohio

Rev. Code § 2305.11.  (Doc. 113).  Plaintiff alleges that these claims are separate and distinct

from his legal malpractice claims and are governed by different statutes of limitations.  (Doc. 120-1).

Under Ohio law, the substance of a claim rather than the form of the claim determines whether the claim is properly characterized as a claim for legal malpractice.  *See Trustees of Ohio Carpenters' Pension Fund v. U.S. Bank Natl. Assn.*, 938 N.E.2d 61, 67 (Ohio App. 8th Dist. 2010) (stating that "[i]n Ohio, the applicable statute of limitations is determined not from the form of pleading or procedure, but from the gist of the complaint" and holding that the plaintiff could "not seek to extend the statute of limitations by casting its malpractice claim as a fraud claim.") (citing *Hibbett v. Cincinnati*, 4 Ohio App.3d 128, 131, 446 N.E.2d 832 (1982)).

> Malpractice by any other name still constitutes malpractice.  [M]alpractice consists of "the professional misconduct of members of the medical profession and attorneys."   Such professional misconduct may consist either of negligence or of breach of the contract of employment.  It makes no difference whether the professional misconduct is founded in tort or contract, it still constitutes malpractice.  Accordingly, the one year malpractice statute of limitations set forth in R.C. 2305.11 is applicable.

*Muir v. Hadler Real Estate Mgmt. Co.*, 446 N.E.2d 820, 822 (Ohio App. 10th Dist. 1982) (citations omitted).  Nonetheless, "a litigant may assert claims for, *inter alia,* fraud, breach of contract, and breach of fiduciary duty if the conduct underlying those claims is distinct from the conduct underlying the malpractice claim." *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 5 F. Supp.3d 922, 926 (S.D. Ohio 2014) (citing *Pierson v. Rion,* No. CA23498, 2010 WL 1636049, at *2 (Ohio App. 2d Dist. Apr. 23, 2010)).  The determinative question is whether the claims arose from the manner in which the attorney represented the client or whether the claims arose from some distinct conduct.  *Id.*  If the claims arose from the manner in which the attorney represented the client, then the malpractice claim subsumes those claims.  (*Id.*).  Otherwise, if the

remaining claims are distinct from the legal malpractice claims, the plaintiff may proceed on those claims. (*Id.*).

In the amended complaint, plaintiff asserts the following claims in addition to his legal malpractice claim (Count Two): (1) breach of fiduciary duty, alleging that a fiduciary duty arose as a result of his attorney-client relationship with defendant Damon; Damon breached his fiduciary duty by failing to attend to plaintiff's legal matters; and Damon accepted payment for services that he failed to complete or that fell below the acceptable standard of care (Doc. 8, Count One); (2) unjust enrichment, alleging that plaintiff was induced to pay fees to Damon for legal services and representation pursuant to the terms of the parties' oral contract and Damon's representations related to the parties' legal services contract, and Damon will be unjustly enriched if allowed to retain the fees (*Id.*, Count Three); (3) promissory estoppel, alleging Damon induced plaintiff to reasonably believe Damon would perform the legal services necessary to pursue plaintiff's legal claims (*Id.*, Count Four); (4) conversion, alleging that Damon was bound to provide legal services to plaintiff as described in the parties' contingency fee arrangement, but Damon failed to provide the promised legal services, failed to return plaintiff's funds to him, and has refused to provide an accurate accounting (*Id.*, Count Five); and (5) negligence, alleging that at all relevant times Damon was "stealing from clients" and providing incompetent representation (*Id.*, Count Six). It is clear from plaintiff's allegations in support of these claims that they all arise from the manner in which Damon represented plaintiff and from Damon's failure to provide legal services for which plaintiff paid him. Thus, all of plaintiff's claims against defendant Damon are subsumed by the legal malpractice claim. *See Davis*, 5 F. Supp.3d at 926. As such, the claims are governed by the one-year statute of limitations provided in Ohio Rev. Code § 2305.11. Because plaintiff filed this lawsuit more than

one year after the attorney-client relationship terminated on August 3, 2010, the claims are time-barred. Defendant Damon is entitled to summary judgment on these claims consistent with the Court of Appeals' remand decision.

### 9. Defendant Crosthwaite's motion for summary judgment (Doc. 144)

Defendant Crosthwaite moves for summary judgment on plaintiff's claims against him. Defendant Crosthwaite argues that first, he was not the employer of defendant Damon when Damon undertook his representation of plaintiff and he did not actually supervise Damon's work. (Doc. 144-1 at 2, 7). Crosthwaite alleges that at all times relevant to plaintiff's complaint, both Crosthwaite and Damon were employees of B&C, which is not a party to this lawsuit. Crosthwaite alleges that plaintiff cannot hold him individually liable for Damon's negligence under a theory of *respondeat superior*. Crosthwaite alleges that while an employer may be held vicariously liable for the negligent acts of its employee acting within the scope and course of his employment, there is no authority for the proposition that a single member of a legal professional association ("LPA") can be held vicariously liable for the torts of the LPA's employee. (*Id.* at 7).

Second, Crosthwaite concedes that Damon was an employee of B&C. (*Id.*). However, Crosthwaite alleges that B&C cannot be held liable for Damon's negligence because Damon was acting outside the scope and course of his employment with B&C. (*Id.* at 7-8). Crosthwaite contends that even if plaintiff had named B&C as a defendant here, B&C could not be held vicariously liable for Damon's alleged negligence. (*Id.* at 8).

Third, Crosthwaite alleges that plaintiff cannot prove the causation element of a legal malpractice claim because the underlying lawsuits lacked any legal merit and plaintiff suffered no damages as a result of Damon's failure to file a lawsuit against Judge Ruehlman. (*Id.* at 3-4).

In response, plaintiff alleges that Crosthwaite can be held liable for Damon's negligence as the co-owner of the law firm that employed Damon; there is no evidence that Damon acted outside the scope of his duties and responsibilities so as to absolve Crosthwaite of *respondeat superior* liability; the Court of Appeals has ruled in this case that an attorney-client relationship existed between plaintiff and defendant Crosthwaite and that plaintiff has stated a claim against Crosthwaite; and at all relevant times, plaintiff was represented by B&C and the underlying lawsuit and potential lawsuit in which they represented him or agreed to represent him were meritorious. (Doc. 146). Plaintiff also alleges that as an owner of the law firm, Crosthwaite had a duty to supervise Damon and that Crosthwaite's partner at B&C, Joseph Butkovich, espoused this legal proposition at the state court hearing on Damon's motion to withdraw. (*Id.* at 2; Doc. 146, Exh. B, Brautigam Aff., ¶ 6).

### A. Undisputed facts

The undisputed facts relevant to plaintiff's claims against defendant Crosthwaite are taken from the exhibits submitted by the parties and plaintiff's deposition testimony (Doc. 144, Attachments), defendant Crosthwaite's affidavit (Doc. 144-3), and plaintiff's affidavit (Doc. 146 at 40-66), but only insofar as the facts would be admissible into evidence. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Most of the assertions in plaintiff's affidavit submitted in opposition to defendant Crosthwaite's motion for summary judgment do not satisfy this standard. The affidavit is comprised of 43 numbered paragraphs that largely rehash plaintiff's memorandum in opposition to defendant Crosthwaite's summary judgment motion. The affidavit consists largely of inadmissible argument, speculation, and hearsay and

sets forth few "facts" based on plaintiff's first-hand knowledge. For example, plaintiff makes the

following vague and inadmissible statements in the affidavit:

> 5. I dispute much of Defendant Crosthwaite's affidavit, including many false statements that I believe to be made with knowledge of their falsity. . . .
> . . . .
>
> 7. The second part of [Crosthwaite's] statement ". . . and [I] had no reason to supervise his substantive work" is knowingly false and a shocking admission that Defendant Crosthwaite cravenly abandoned his obligation to properly supervise an associate. . . ."
> . . . .
>
> 9. At some point during the pendency of this litigation, I spoke to Rick Freeman. . . . Rick Freeman told me that at some point during B&C's representation of him, Mr. Freeman, a non-attorney, noted that Mr. Damon's work was incompetent and pathetic and that Defendant Damon had even filed papers on Mr. Freeman's behalf that incorrectly indicated they were being filed in someone else's name. . . ."

(*Id.* at 41-42). These and the other inadmissible statements included in plaintiff's affidavit must

be excluded from consideration when ascertaining the undisputed facts and ruling on defendant

Crosthwaite's motion for summary judgment. *See Emmons v. McLaughlin*, 874 F.2d 351, 358

(6th Cir. 1989) (noting that "affidavits [that] merely repeated the [plaintiff's] vague and

conclusory allegations . . . were insufficient to generate a genuine issue of material fact"). *Cf.*

*Stevens v. Thetford Township, et al.*, 475 F. App'x 556, 562 (6th Cir. 2012) ("The affidavits were

made on personal knowledge, set out facts that would be admissible in evidence, and showed

that the affiants were competent to testify on the matters stated. They satisfied all the

requirements for affidavits used to support a motion for summary judgment under Fed. R. Civ. P.

56(c)(4).").

    The competent, undisputed evidence of record shows that between May 2001 and

October 2013, Crosthwaite was an owner of and partner with the firm of Butkovich &

Crosthwaite, LPA. (Crosthwaite Aff., Doc. 144-3, ¶ 5). Defendant Damon was an associate

lawyer with the law firm from January of 2009 until July of 2010, when he was discharged from the firm. (*Id.*, ¶ 9). At some point, it was discovered that Damon was personally accepting and retaining money from his clients on matters that he concealed from B&C and for which he did not pay B&C. (*Id.*, ¶ 13). It was ultimately determined that Damon had taken more than $60,000 from B&C, which he agreed to repay. (*Id.*).

While associated with B&C, Damon represented plaintiff in the Hackett litigation and had agreed to institute a federal action against a state court judge, Judge Ruehlman, on plaintiff's behalf. (Doc. 144-4, Pltf. Depo. at 12, 36). According to plaintiff, Damon informed plaintiff before he was retained that he was a partner in B&C, and plaintiff never retained Damon exclusively. (*Id.* at 36, 41). Plaintiff believed at all relevant times that he was represented by B&C. (Doc. 146, Exh. B, Pltf. Aff., ¶ 31). Plaintiff met with Damon in December 2009 and Damon agreed to take the Hackett case on a one-third contingency fee basis. (Doc. 144-4, Pltf. Depo. at 35, 39, 41). Plaintiff did not sign a contingency fee agreement with either Damon or B&C. (*Id.* at 41). Damon made requests for payments from plaintiff, and plaintiff made the payments with a credit card. (*Id.* at 28-29). A $5,000 charge to his credit card that plaintiff authorized as payment for institution of a lawsuit against Judge Ruehlman was credited to an entity know as Damon Law Offices. (*Id.* at 85-86). Defendant Crosthwaite was not involved in plaintiff's representation. (Doc. 144-3, ¶ 16). Plaintiff never personally spoke with Crosthwaite. (Doc. 144-4 at 44, 102). When B&C confirmed that Damon had been disloyal to the firm, he was immediately terminated. (Doc. 144-3, ¶ 15). Damon filed the motion to withdraw from the Hackett litigation in August 2010, after which Butkovich spoke with plaintiff concerning Damon's departure from the firm and the firm's intention to protect plaintiff's interests by referring him to attorneys who could handle his lawsuit. (Doc. 144-4 at 62-64). Plaintiff also

received correspondence from B&C which he believed had been sent by both Butkovich and

Crosthwaite (Doc. 146, Pltf. Aff., ¶ 33), but he never received any correspondence signed by

Crosthwaite. (Doc. 144-4 at 102-03; Deft's Exh. 1). The correspondence plaintiff received was

a letter dated August 4, 2010, from B&C and signed by Butkovich only. (Doc. 144-4, Pltf.

Depo. at 120; Doc. 32-1, Brautigam Aff., Exh. A). The letter advised plaintiff that Damon was

no longer associated with B&C and gave plaintiff a choice as to who would represent him on his

case or cases in the future: Damon or B&C. (Doc. 32-1, Exh. A). After receiving the letter,

plaintiff decided to "go with the firm [B&C]." (Doc. 144-4, Pltf. Depo. at 120). Plaintiff

indicated his preference for representation by B&C on the letter and signed and dated the letter

August 31, 2010. (Doc. 32-1, Exh. A). The "physical evidence" plaintiff relies on to show he

had retained B&C are the pleadings filed in the Hackett litigation, which "said 'B&C.'" (Doc.

144-4, Pltf. Depo. at 129-30).

    **B. Law of the case doctrine**

    Plaintiff alleges that the Court of Appeals has ruled in this case that an attorney-client

relationship existed between plaintiff and defendant Crosthwaite. Plaintiff argues that the Court

of Appeals' finding is the law of the case which binds the District Court. (Doc. 146 at 29-30,

33).

    In its opinion reversing the District Court's decision dismissing this action for lack of

subject matter jurisdiction, the Court of Appeals found that it does not appear to a legal certainty

on the face of plaintiff's complaint that he has failed to satisfy the jurisdictional amount. (Doc.

107 at 5). In reaching its conclusion, the Court of Appeals noted that a legal malpractice claim in

Ohio has four elements: (1) an attorney client relationship giving rise to a duty, (2) a breach of

that duty, (3) damages, (4) proximately caused by the attorney's breach. (*Id*. at 4). The Court

stated that a settlement of the underlying action does not always act as a waiver of the client's

malpractice claim against his attorney. (*Id*.). The Court then stated:

> Thus, Brautigam has stated a claim under Ohio law. Crosthwaite argues that
> Brautigam cannot establish causation. But Brautigam is not required to prove
> causation to satisfy the amount-in-controversy requirement. [citations omitted].
> Whether the claim will succeed is a merits assessment.

(*Id*. at 5).

Plaintiff interprets the Court of Appeals decision as follows: (1) the Court of Appeals

specifically held that plaintiff was a client of Defendant Crosthwaite (Doc. 146 at 5; *Id*.,

Plaintiff's Response to Defendant Crosthwaite's Proposed Undisputed Facts, No. 9); (2) the

Court of Appeals "stated that Plaintiff has stated a claim against Defendant Crosthwaite" (*Id*.,

Nos. 1, 3, 4, 6, 9, 10, 11, 12); and (3) "Although Plaintiff is not sure of the exact date the

relationship between [] Plaintiff and Damon terminated," the Court of Appeals "specifically

held" that the "attorney-client relationship with Defendant Crosthwaite continued once the

relationship with Damon ended." (*Id*., No. 12).

Plaintiff's interpretation of the Court of Appeals' decision does not coincide with the

language of the opinion. The Court of Appeals found that plaintiff has "stated a claim under

Ohio law" for legal malpractice. (Doc. 107 at 4). In making its finding, the Court stated that it

was rejecting Crosthwaite's causation argument as immaterial to the jurisdictional issue. (*Id*.).

This is the single mention of Crosthwaite in the Court of Appeals' opinion, other than when the

Court set forth plaintiff's claims against the parties and referenced the law firm of Butkovich & Crosthwaite as an entity.[6]  The Court of Appeals did not discuss the attorney-client relationship between Crosthwaite and plaintiff and the evidence, if any, that supported the existence of such a relationship.  The Court of Appeals did not "specifically [hold]" that plaintiff was a client of defendant Crosthwaite as plaintiff alleges.  (*See* Doc. 146 at 5).  Further, contrary to plaintiff's allegations, the Court of Appeals did not hold expressly or by implication that the "attorney-client relationship with Defendant Crosthwaite continued once the relationship with Damon ended."  (*See* Plaintiff's Response to Defendant Crosthwaite's Proposed Undisputed Facts, No. 12).  The Court of Appeals held only that plaintiff had stated a claim for legal malpractice and declined to address the merits of the claim.  (Doc. 107 at 4-5).  Because the Court of Appeals did not dismiss Crosthwaite from the lawsuit, the necessary implication is that the Court found plaintiff had stated a claim against both Damon and Crosthwaite.  The District Court is bound by the Court of Appeals' holding that plaintiff stated a claim for legal malpractice against the two remaining defendants.  *See Westside Mothers*, 454 F.3d at 538 (the law of the case doctrine is limited to those issues decided in the earlier appeal).  The Court of Appeals made no other findings related to Crosthwaite that constitute the law of the case and bind the District Court.

Accepting that the Court of Appeals found that plaintiff stated a claim for legal malpractice against Crosthwaite, the Court of Appeals' finding is not dispositive of plaintiff's legal malpractice claim against defendant Crosthwaite.  Plaintiff cannot rest on the Court of

---

[6] The Court of Appeals summarized plaintiff's allegations against B&C as follows:

> On August 3, 2010, Damon moved to withdraw as Brautigam's counsel in the Hackett litigation. The next day B&C mailed a letter to Brautigam, stating that Damon was no longer associated with B&C and asking him to elect whether he would like B&C to continue representing him in his 'case(s)'.  According to Brautigam, he elected to proceed with B&C.  In mid-August, he was advised that B&C would not be proceeding with the litigation and would help Brautigam transition to a new attorney; but instead, B&C abandoned him as a client. . . .

(Doc. 107 at 2).

Appeals' finding that he satisfied the Rule 12(b)(6) standard to meet his evidentiary burden at the summary judgment stage. The Rule 12(b)(6) standard is much more lenient than the Rule 56 summary judgment standard. To state a claim to relief under Fed. R. Civ. P. 12(b)(6), the plaintiff need only allege facts in the complaint which, if accepted as true, are sufficient to both "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009)). The court is bound to "construe the plaintiff's complaint liberally, in plaintiff's favor, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). On summary judgment, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation[s] or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court must look beyond the pleadings and determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. The court's role is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Clarcor, Inc. v. Columbia Cas. Co.*, No. 3:10-00336, 2010 WL 5211607, at *6 (M.D. Tenn. Dec. 16, 2010) (quoting Fed. R. Civ. P. 56 Advisory Committee Notes to 1963 amendment). Accordingly, the Court of Appeals' finding that plaintiff has stated a claim for legal malpractice against Damon and Crosthwaite is not dispositive of whether plaintiff has carried his burden on summary judgment to set forth specific facts showing that there is a genuine issue for trial on his claims against defendant Crosthwaite. *Anderson*, 477 U.S. at 256. The Court must examine the

evidence presented by the parties in light of their arguments and determine whether there is a genuine issue for trial on plaintiff's claims against defendant Crosthwaite.

### C. Defendant Crosthwaite's liability

Initially, the Court finds that plaintiff's claims for breach of fiduciary duty, unjust enrichment, negligence, and conversion against defendant Crosthwaite are subsumed under plaintiff's legal malpractice claim. *See supra,* pp. 25-26.

Turning to the merits of plaintiff's legal malpractice claim against defendant Crosthwaite, "it is well-settled that the first, and indispensable, element of a direct claim for legal malpractice is the existence of an attorney-client relationship." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth,* 540 F. Supp.2d 900, 913 (S.D. Ohio 2007), *aff'd,* 349 F. App'x 983 (6th Cir. 2009) (citing *Krahn v. Kinney,* 538 N.E.2d 1058 (Ohio 1989); *Landis v. Hunt,* 610 N.E.2d 554 (Ohio App. 10th Dist. 1992)). To demonstrate this essential element of his legal malpractice claim against Crosthwaite, plaintiff relies solely on the Court of Appeals' finding that plaintiff "has stated a claim under Ohio law." (Doc. 146 at 5, 30). For the reasons discussed above, plaintiff cannot rely on the Court of Appeals' finding that he has stated a claim for legal malpractice to satisfy the more demanding summary judgment standard. Plaintiff must introduce evidence in response to defendant Crosthwaite's motion for summary judgment to show there is a genuine issue for trial on his legal malpractice claim against Crosthwaite.

Plaintiff has failed to introduce any evidence to demonstrate the existence of an attorney-client relationship with Crosthwaite. There is no dispute that plaintiff was represented by Damon at all relevant times. Further, plaintiff alleges that "[a]t all relevant times [he] was [r]epresented by B&C, [n]ever Damon [a]lone." (Doc. 146. at 27). In support of his position, plaintiff relies on: (1) his deposition testimony that he hired B&C and was represented by the

firm (Doc. 146 at 27); (2) a contingency fee agreement which plaintiff concededly never signed pursuant to which Damon purportedly agreed to take plaintiff's case "on behalf of B&C" (Doc. 146 at 20, citing Doc. 144-4, Plaintiff's Depo. at 36, 39); and (3) the inclusion of the firm's name on pleadings filed in the state court case. (Doc. 146 at 18, 20-21, citing Doc. 144-4, Pltf. Depo. at 129-30: "[E]very pleading that was filed said [B&C]. That was the firm I had retained. That was the firm I had an agreement with and a course of conduct with. . . ."); Doc. 146, Exh. C). This evidence is not material to the question of whether Crosthwaite as an individual member of the B&C law firm represented plaintiff and had an attorney-client relationship with him. Plaintiff has not introduced any other evidence to show that Crosthwaite represented him in the Hackett litigation or agreed to represent him in the case against Judge Ruehlman. Thus, plaintiff has failed to carry his burden on summary judgment to produce sufficient evidence to permit a reasonable factfinder to conclude he had an attorney-client relationship with Crosthwaite. Plaintiff cannot prevail on his legal malpractice claim against defendant Crosthwaite under a direct theory of liability.[7]

Nor can plaintiff hold defendant Crosthwaite liable for any legal malpractice committed by Damon under a theory of vicarious liability or *respondeat superior*. Under this theory of liability, an employer is vicariously or secondarily liable for the negligence of its employee, whose liability is primary. *Taylor v. Belmont Cmty. Hosp.*, No. 09 BE 30, 2010 WL 3328650, at *2 (Ohio App. 9th Dist. Aug. 16, 2010) (citing *Clark v. Southview Hosp. & Fam. Health Ctr.*, 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994)). "For the wrong of a servant acting within the scope

---

[7] Nor could plaintiff prevail on a direct claim for legal malpractice against B&C. An attorney-client relationship can never be established with a law firm. *Wuerth*, 540 F. Supp.2d at 913 ("Defendant [law firm] . . . is not an attorney. Rather, it is a limited liability company. . . . Defendant . . . has never taken the bar examination; it is not admitted to the bar; and it is not subject to professional discipline. Since Defendant . . . is not an attorney, an attorney-client relationship with it could never be established. Instead, the attorney-client relationships are with the individual lawyers of the firm, and the firm's liability, if any, is dependent upon the liability of those individual lawyers. This is the essence of vicarious liability.").

of his authority, the plaintiff has a right of action against either the master or the servant, or against both. . . . . "  *Id.* (quoting *Losito v. Kruse*, 136 Ohio St. 183, 187, 24 N.E.2d 705 (1940)). "Still, a principal is vicariously liable only when an agent could be held directly liable[.]"  *Id.* (citing *Losito*, 136 Ohio St. at 188, 24 N.E.2d 705).  *See also Wuerth*, 540 F. Supp.2d at 913 (citing *Albain v. Flower Hospital*, 50 Ohio St.3d 251, 254-55, 553 N.E.2d 1038 (1990) ("[i]t is a fundamental maxim of law that a person cannot be held liable, other than derivatively, for another's negligence.").  Thus, an employer can be liable for the alleged malpractice of its employee only if the employee can himself be held liable.

Under Ohio law, a legal professional association is liable upon contract and for the torts of an attorney performed within his or her actual or apparent authority.  *David v. Schwarzwald, Robiner, Wolf & Rock Co., L.P.A.*, 607 N.E.2d 1173, 1183 (Ohio App. 8th Dist. 1992) (citing *Reiner v. Kelley*, 457 N.E.2d 946, 951 (Ohio App. 10th Dist. 1983)).  Further, individual shareholders of a legal professional association can be held liable for the debts of the association. *KMS Energy, Inc. v. Titmas*, 610 N.E.2d 1080, 1081 (Ohio App. 9th Dist. 1992) (citing Gov. Bar R. III) (each member of a limited liability company "shall be jointly and severally liable for any liability of the firm based upon a claim arising from acts and omissions in the rendering of legal services while he or she was a member, partner, or equity holder. . . .").

Plaintiff's legal malpractice claim against Crosthwaite which is premised on the theory of vicarious liability must fail because plaintiff does not seek to hold Damon's employer, B&C, vicariously liable for Damon's torts.  Plaintiff has not named B&C as a defendant in this lawsuit (Doc. 8) and, therefore, the legal professional association cannot be held liable in this matter for Damon's tortious acts and omissions.  Plaintiff has presented the Court with no authority that Crosthwaite, as an individual member of a law firm, may be held vicariously liable under the

circumstances of this case.  Because plaintiff has not brought a claim against B&C, there is no basis for imposing vicarious liability on Crosthwaite as an individual member of the firm for any torts committed by Damon.

Finally, neither B&C (which is not named as a party to this lawsuit) nor defendant Crosthwaite could be held vicariously liable for Damon's alleged legal malpractice because plaintiff's claims against Damon are time-barred.  For the reasons discussed earlier, the District Court is bound by the Court of Appeals' decision to find that plaintiff's claims against Damon were not timely filed.   Because plaintiff cannot proceed on his claims against Damon, Crosthwaite cannot be held vicariously liable for the malpractice alleged to have been committed by Damon. *See Wuerth,* 540 F. Supp.2d at 912 (law firm could not be vicariously liable for alleged malpractice of partner in the firm because the statute of limitations had run as to the claims against the partner individually). *See also Illinois Natl. Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.,* No. 10AP-290, 2010 WL 4926572, at *5-6 (Ohio App. 10th Dist. Dec. 2, 2010) (firm could not be held vicariously liable where the statute of limitations against attorneys alleged to have committed malpractice had run); *JS Products, Inc. v. Standley Law Group, LLP,* No. 09-cv-311, 2010 WL 3702638, at *6 (S.D. Ohio 2010) (judgment on the pleadings granted in favor of law firm where there could be no viable claim against an individual firm lawyer because the statute of limitations had run).

For these reasons, defendant Crosthwaite cannot be held either directly or vicariously liable for any acts of malpractice allegedly committed by Damon.  Plaintiff cannot rely on the allegations of his pleadings and the inadmissible statements in his affidavit to create a genuine issue of material fact on his legal malpractice claim against Crosthwaite.  Summary judgment should be granted in favor of defendant Crosthwaite.

### IT IS THEREFORE ORDERED THAT:

1.  Plaintiff's motion to strike defendant Damon's motion for summary judgment and plaintiff's motion for sanctions (Doc. 121) is **DENIED**.

2.  Defendant Damon's motion to strike plaintiff's affidavit and all unauthenticated exhibits offered in opposition to defendant's motion for summary judgment and for sanctions (Doc. 114) is **DENIED**.

3.  Defendant Damon's motion for extension of time to submit expert report (Doc. 115) is **DENIED** as moot.

4.  Plaintiff's motion for extension of time to submit responses to Docs. 114 and 116 (Doc. 118) is **DENIED** as moot.

5.  Plaintiff's motion for sanctions (Doc. 138) is **DENIED**.

6.  Non-party Medmarc's motion to specially appear to oppose defendant Damon's motion for leave to file a third-party complaint (Doc. 140) is **GRANTED**.

### IT IS THEREFORE RECOMMENDED THAT:

1.  Defendant Damon's motion to dismiss for lack of jurisdiction (Doc. 130) be **DENIED**.

2.  Plaintiff's motion for leave to file a third amended complaint (Doc. 125) be **DENIED**.

3.  Defendant Damon's motion for leave to file a third-party complaint (Doc. 126) be **DENIED**.

4.  Defendant Damon's motion for summary judgment (Doc. 113) be **GRANTED** and summary judgment be entered in favor of defendant Damon and against plaintiff on all claims against defendant Damon.

5.  Defendant Damon's motion to exclude plaintiff's expert witness reports and testimony (Doc. 116) be **DENIED** as moot.

6.  Plaintiff's motion to strike defendant Damon's expert report (Doc. 124) be **DENIED** as moot.

7. Defendant Crosthwaite's motion for summary judgment (Doc. 144) be **GRANTED** and summary judgment be entered in favor of defendant Crosthwaite and against plaintiff on all claims against defendant Crosthwaite.

Date: 11/17/15

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHAEL G. BRAUTIGAM,                                  Case No. 1:11-cv-551
        Plaintiff,                                           Black, J.
                                     Litkovitz, M.J.

      vs.


GEOFFREY P. DAMON, et al.,
        Defendants.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).